IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA M. GRITTERS;   )<br>                         )<br>       Plaintiff,       )<br>    v.                   )<br>                         )<br>OCWEN LOAN SERVICING, LLC;   )<br>NATIONSTAR MORTGAGE, LLC;    )<br>FEDERAL HOME LOAN MORTGAGE   )<br>CORPORATION; and PIERCE &    )<br>ASSOCIATES, P.C.            )<br>                         )<br>       Defendants.       ) | No. 1:14-cv-00916<br><br>Judge: Edmond E. Chang<br><br>Magistrate Judge: Jeffrey T. Gilbert |

## Defendant Ocwen Loan Servicing, LLC's Rule 12(b)(6) Motion To Dismiss And Incorporated Memorandum Of Law

Defendant Ocwen Loan Servicing, LLC ("Ocwen") moves to dismiss Counts II and IV through VI of Plaintiff Donna M. Gritters' Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).[1]

### Introduction

This case is about the servicing of Gritters' mortgage loan. After Gritters defaulted on her loan repayment obligations, Ocwen acquired servicing rights to the loan and offered Gritters a loan modification. Gritters alleges that after she accepted the modification, Ocwen continued to treat the loan as defaulted and as a result, erred in applying her payments and mismanaged her escrow account. Based on these alleged servicing errors, Gritters asserts the following claims against Ocwen: breach of contract (Count I); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count II), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* (Count IV), and the Real Estate

---

[1] Pursuant this Court's motion practice procedures, Ocwen states that Gritters objects to this motion.

Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, *et seq.* (Count V); and a breach of fiduciary duty (Count VI).

Counts II, IV, V, and VI must be dismissed because Gritters' amalgam of conclusory allegations lumping Ocwen together with co-defendant Nationstar Mortgage, LLC ("Nationstar") fails to satisfy even the minimum notice requirements of Rule 8(a), much less the heightened standard of particularity mandated by Rule 9(b). Each of these claims also sufferers independent pleading defects. Ocwen is not a debt collector under the FDCPA and Count II fails in any event because the claims are time-barred and fail to identify any actionable debt collection attempts. The ICFA claims fail because they are duplicative of the breach of contract claim and ICFA does not apply to purely private contractual disputes. The RESPA claims fail to identify any actionable qualified written requests and do not sufficiently plead damages. And, the breach of fiduciary duty claim is entirely duplicative of the breach of contract claim.

For these reasons, Counts II, IV, V, and VI should be dismissed with prejudice at the pleadings stage.

## Allegations in the Pleadings[2]

Gritters executed a mortgage loan in the amount of $59,900.00 in favor of Taylor, Bean & Whitaker for the purchase of the property located at 3018 182nd Place, Lansing, Illinois 60438 on December 8, 2003. (Compl. ¶ 9, Exs. A-B). Gritters defaulted on her repayment obligations under the loan in June 2009. (*Id.* ¶ 23). Ocwen acquired servicing rights to the loan on August 13, 2009 and subsequently filed a foreclosure action against Gritters. (*Id.* ¶¶ 24-25). Ocwen then offered Gritters a loan modification that she accepted on March 20, 2010 and Ocwen dismissed the foreclosure action on May 6, 2011. (*Id.* ¶¶ 26-28, 60, Ex. C).

---

[2] Gritters' allegations are presumed to be true for the purposes of this motion only.

After Gritters accepted the loan modification, Ocwen "continued to treat the loan as if it was in default." (Compl. ¶ 39). Ocwen allegedly incorrectly charged Gritters' escrow account for taxes and insurance and failed to refund escrow overages in March 2011, March 2012, and March 2013. (*Id.* ¶¶ 41-55, 62-72, 74-82). Co-defendant Freddie Mac obtained ownership of the loan in April 2012, and Nationstar purchased the servicing rights from Ocwen on May 16, 2013. (*Id.* ¶¶ 73, 83). Between April 2011 and September 2013, Gritters and the Illinois Attorney General "sent numerous RESPA Qualified Written Requests ("QWR") to Ocwen." (*Id.* ¶ 89). "Ocwen responded to each QWR by claiming that it had investigated [Gritters'] account and verified its own accounting as accurate." (*Id.*).

## Motion to Dismiss Standards

The Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss under Rule 12(b)(6): "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and, "[s]econd, its allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations of that claim are merely "consistent with" liability, "too vague to provide notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

**Argument**

I.	**The Complaint Fails to Meet the Notice Requirement of Rule 8(a).**

The "short and plain" statement required by Rule 8(a) must be enough to give a defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. 544, 555 (2007). Indeed, "[t]he purpose behind Rule 8 is to ensure that both the defendant and the court have fair notice of the claims alleged." *Easley v. Verizon Wireless*, 03 C 2969, 2004 WL 2005819, at *2 (N.D. Ill. Aug. 25, 2004). Gritters largely ignores Rule 8 and generically lumps Ocwen together with Nationstar under the term "Servicers" in the counts asserted against Ocwen. (*See*, *e.g.*, Compl. ¶¶ 109-114 (alleging the "Servicers'" FDCPA violations), ¶ 124 ("The Servicers violated 815 ILCS 505/2"), ¶¶ 142 ("The Servicers violated RESPA …); ¶ 151 ("The Servicers breached their [fiduciary] duty …")).

These allegations against "Servicers" fail to satisfy the threshold notice requirements of Rule 8(a), and the claims against Ocwen should be dismissed on this basis. *See Shapo v. Engle, et al.*, No. 98 C 7909, 1999 WL 1045086, at *13 (N.D. Ill. Nov. 12, 1999) ("Where there are multiple defendants, the complaint must notify each defendant of the specific act purportedly committed by the defendant, which justifies that defendant's inclusion in the particular count.").

II.	**Count II Fails to State a Claim Under the FDCPA.**

Count II alleging various violations of the FDCPA fails because the alleged conduct underlying the claims relates to Gritters' loan modification agreement, but Ocwen is not a debt collector with respect to the modified loan. Regardless, the claims also fail because they are time-barred and do not identify any actionable debt collection conduct.

4

### A. Ocwen is not a debt collector with respect to the modified loan.

The FDCPA only applies to "debt collectors," which includes persons or entities whose principal purpose is to collect the debts of others. 15 U.S.C. § 1692a(6). Debt collectors do not include persons "collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity … concerns a debt which was originated by such person" or "which was not in default at that the time it was obtained by such person." *Id.* at § 1692a(6)(F). Gritters alleges that because Ocwen acquired servicing rights to the loan after she defaulted on her repayment obligations, it is a debt collector as defined in the FDCPA. (Compl. ¶¶ 23-24, 208). But this conclusion overlooks the undisputed fact that Ocwen modified the loan, and therefore cannot be a debt collector because it sought to collect under the superseding loan modification agreement rather than on the original defaulted note.

Where a loan servicer obtains servicing rights to a loan that is in default but has been superseded by a renegotiated payment plan, the Seventh Circuit has held that whether the servicer is a debt collector depends on whether it seeks to collect on the original defaulted note or under the new agreement. *See Bailey v. Security Nat'l Serv. Co.*, 154 F.3d 384, 387 (7th Cir. 1998) ("Common sense and the plain meaning of the statute require that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan, or forbearance agreement that is current."). In *Bailey*, the Court held that where the borrowers defaulted on their note but signed a forbearance agreement with their lender and servicing rights were subsequently assigned, the new servicer was not a debt collector because it sought to collect on the forbearance agreement—which was not in default—rather than the original note. *Id.* at 387-88. The Court noted that it was

5

"essential" to distinguish between the forbearance agreement that was the object of the debt collection activity from the "temporarily displaced" defaulted note. *Id.* at 388.

The Seventh Circuit's reasoning in *Bailey* applies equally here. The target of Gritters' FDCPA claims is Ocwen's conduct with respect to the loan modification agreement, not the original note. As recognized by the Seventh Circuit, this distinction is essential because otherwise, Gritters' "default could never be superseded by a new payment plan, even one that clearly benefitted both parties at the time it was executed," and a loan servicer like Ocwen would be "subject to the hyper-technical requirements of the [FDCPA] no matter how far down the line it is hired to service a debt that superseded a debt previously in default …" *See id.* at 387-88; *see also Faulconer v. MERS, Inc.*, No. 5:12-CV-246, 2014 WL 583006, at *7 (M.D. Ga. Feb. 13, 2014) ("Authority in the Seventh Circuit suggests, for purposes of deciding whether [a party] is a debt collector under the FDCPA, that [a] loan modification may serve as the starting point for determining when the loan entered default rather than its status at the time it was first assigned) (*citing Bailey*, 154 F.3d at 388); *Dayhoff v. Wells Fargo Home Mortg., Inc.*, No. 6:13-cv-1132, 2013 WL 6283583, at *4 (M.D. Fl. Dec. 4, 2013) (allegation that defendant was a debt collector was "fatally contradict[ed]" by a loan modification given to plaintiff after defendant obtained servicing rights to the defaulted loan). Accordingly, because Ocwen modified the loan and began collecting under the loan modification agreement, it could not be a debt collector, and Count II should be dismissed in its entirety.

### B. Gritters' § 1692g(a) claim is time-barred.

A debt collector must send a consumer a debt validation notice within five days of its initial communication with the consumer in connection with the collection of a debt. 15 U.S.C. § 1692g(a). Gritters alleges that the "Servicers failed to send a proper validation notice after the initial communication" with her. (Compl. ¶ 114). But Ocwen began servicing the loan on

6

August 13, 2009 and filed a foreclosure action on February 25, 2010 (*id.* ¶¶ 24-25), so even if it failed to send Gritters a timely written debt validation notice, such failure would have occurred prior to the foreclosure and years before Gritters filed the Complaint on February 10, 2014 [Dkt. No. 1]. Since FDCPA claims are subject to a one-year statute of limitations, Gritters' § 1692g(a) claim is untimely and should be dismissed with prejudice.[3] *See* 15 U.S.C. § 1692k(d).

### C. Gritters' § 1692d claim fails to identify any harassing, oppressive, or abusive conduct.

The FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person *in connection with the collection of a debt*." 15 U.S.C. § 1692d (emphasis added). Prohibited conduct includes the use or threat of violence or criminal means to cause physical harm, the use of obscene, profane, or abusive language, publication of a list of consumers who allegedly refuse to pay debts, and repeated and continuous telephone calls intended to annoy or harass the recipient. *Id.* To plead a violation of § 1692d, a plaintiff must demonstrate that the challenged behavior was "in connection with the collection of a debt" and that "the natural consequence" of that behavior is to abuse, harass, or oppress. *See Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 774 (7th Cir. 2003).

Gritters has not alleged that Ocwen engaged in any conduct enumerated in § 1692d. Nor has she identified any particular debt collection attempts by Ocwen. Rather, her claim rests solely on "the Servicers'" internal management of her account—*e.g.*, their payment application and escrow management processes. (*See* Compl. ¶ 109). But Gritters cannot manufacture a § 1692d claim based on her disputes over the amount of the debt or Ocwen's accounting methods; the conduct in question must involve the *collection of a debt*. *See* 15 U.S.C. § 1692d; *Chambers v. Habitat Co.*, 68 Fed. Appx. 711, 715 (7th Cir. 2003) (dismissing § 1692d claim and noting that

---

[3] Gritters pleads a violation of 15 U.S.C. § 1692g(b) as well but this claim is directed towards Nationstar only. (Compl. ¶¶ 115-116).

"the FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts …"). And, Gritters has not alleged how Ocwen's alleged conduct—which did not involve the collection of a debt—was abusive, harassing, or oppressive.

Courts routinely dismiss claims alleging conduct that falls short of the conduct listed in § 1692d, and this Court should do the same here. *See Harrer v. RJM Acquisitions, LLC*, No. 10-cv-7922, 2012 WL 162281, at *6 (N.D. Ill. Jan. 19, 2012) (dismissing claim where the collection letter did not include abusive or harassing language and was only informational); *Feltman v. Blatt*, 2008 WL 5211024, at *5 (N.D. Ill. Dec. 11, 2008) (threatening to file suit and filing a time-barred suit to collect a debt "is simply not the type of behavior contemplated by § 1692d).

> **D. Gritters' claims under §§ 1692e & 1692f fail because she does not identify any actionable attempts to collect her debt.**

Gritters alleges that the Servicers' "unfair, unconscionable, false and deceptive" actions violate §§ 1692e and 1692f of the FDCPA. (Compl. ¶ 110). Section 1692e prohibits the "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And § 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. These claims should be dismissed because Gritters has not identified any specific actionable attempts by Ocwen to collect her debt.

The § 1692e claim is based on the statutory prohibition on falsely representing "the character, amount, or legal status of any debt." (*See* Compl. ¶ 110 (alleging that the Servicers misrepresented the status of the debt, declared the loan delinquent, and misrepresented the escrow amounts)); 15 U.S.C. § 1692e(2). Communications from debt collectors are actionable under § 1692e when made in connection with the collection of a debt. *See Gburek v. Litton Loan Servicing*, 614 F.3d 380, 382 (7th Cir. 2010). Here, the only communication from Ocwen identified in the entire Complaint that allegedly falsely represents the debt is a letter sent to

8

Gritters on March 3, 2011. (Compl. ¶ 49). But this letter is alleged only to inform Gritters about Ocwen's disbursement of escrow funds; it does not make a demand for payment. (*Id.*). The Seventh Circuit has held that such informational communications are not related to "the collection" of a debt. *See Bailey*, 154 F.3d at 388. And in any event, this letter is not actionable because a claim based on it would be time-barred under the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

The § 1692f claim is based on the "Servicers'" attempts to collect amounts that were allegedly unauthorized by law or contract. (Compl. ¶ 110); *see* 15 U.S.C. § 1692f(1). The focus in such claims is on the *means* used to collect the alleged debt—such as a collection letter—and "merely initiating debt collection activities will not violate" section 1692f(1). *Fong v. Franklin Collection Serv., Inc.*, No. 12 C 16666, 2012 WL 3581171, at *4 (N.D. Ill. Aug. 16, 2012). But Gritters sets forth no specific facts regarding these alleged unauthorized amounts, let alone any facts regarding the means Ocwen used to collect them. And, Gritters certainly does not identify any means Ocwen used to collect these amounts within one year of filing the Complaint. These pleading deficiencies are fatal and require dismissal. *See Brooks*, 578 F.3d at 581-82 (requiring dismissal of claims merely "consistent with" liability).

### III.  Gritters' ICFA Claim (Count IV) Fails For Several Reasons.

#### A.  ICFA does not apply to purely private contractual disputes.

Count IV must be dismissed because ICFA is not available as a remedy for a purely private contractual dispute that does not impact the public generally. The Illinois Supreme Court has held that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 801, 844 (Ill. 2005). Accordingly, courts in this district have dismissed breach of contract claims couched as ICFA claims asserted against loan servicers. *See, e.g.*, *Sindles v. Saxon Mortg. Services, Inc.*, No. 11 C

7224, 2012 WL 1899401, at *4 (N.D. Ill. May 22, 2012) (Hon. Holderman) (dismissing ICFA claim where allegations regarding loan servicer's "allegedly unauthorized escrow account, charging of improper late fees, and general mismanagement of [plaintiff's] account" were "virtually identical to [plaintiff's] breach of contract claims"); *Kesten v. Ocwen Loan Servicing, LLC*, No. 11 C 6981, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (Hon. Holderman) (dismissing ICFA claim as a "redundancy" where allegations regarding loan servicing errors were "virtually the same allegations in [plaintiff's] breach of contract claim").

This rule is particularly applicable in cases that address purely private contractual disputes because ICFA "is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier v. First Fed. Savings & Loan Ass'n of Champaign*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992) (dismissing ICFA claim premised on fees charged pursuant to a loan agreement); *see also Stern v. Great W. Bank*, 959 F. Supp. 478 (N.D. Ill. 1997) (no ICFA claim where bank and customer simply disagreed on the interpretation of the contract between them); *AGFA v. Wagner Printing Co.*, 2002 WL 1559663 (N.D. Ill. Jul. 10, 2002) (dismissing ICFA claim involving dispute over interpretation of liquidated damages agreement between contracting parties).

Here, Gritters' ICFA claims are based on her reliance "on the terms of the loan modification" and her expectation that "contracts [should] be honored." (Compl. ¶¶ 128, 133). In other words, the claims are based on the same conduct as her breach of contract claim. (*Compare* Compl. ¶ 105 *with id.* ¶¶ 125-136). Because Gritters' claims are "essentially a dispute about the terms and conditions of the contract[] between the parties,"—*i.e.*, Ocwen's application of payments and management of the escrow account—they are purely private disputes "not

covered by the ICFA." *See AGFA*, 2002 WL 1559663 at *2 (dismissing ICFA claim that was, at its "core, a claim for breach of contract").

   **B. Gritters' "deceptive practices" claim does not satisfy Rule 9(b).**

  Gritters' claim under ICFA's "deceptive practices" prong "must be pleaded with the same particularity as common law fraud and must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009). That is, Gritters must plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to [her]." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082-83 (7th Cir. 1997). And, Gritters must identify *particular communications* containing either deceptive misrepresentations or deceptive omissions. *See De Bouse v. Bayer*, 922 N.E. 2d 309, 316 (Ill. 2009).

  But Gritters fails to allege the who, what, when, where, or how of any alleged fraud. Rather than plead the specific fraud elements required under Rule 9(b) and identify or attach any particular fraudulent communications sent by Ocwen, Count IV consists of muddled allegations against the "Servicers" generally. (*See* Compl. ¶¶ 131-137). This is insufficient under Rule 9(b) and further compels dismissal. *See Pope v. Smith-Rothchild Fin. Co.*, No. 03 C 3335, 2003 WL 2288937, at *2 (N.D. Ill. Dec. 8, 2003) (fraud claim that lumped defendants together was dismissed for failure to satisfy the particularity mandates of Rule 9(b)).

   **C. Gritters' "unfairness" claim is insufficiently pled.**

  Gritters' claim under ICFA's "unfairness" prong is also insufficiently pled. To be considered unfair "a defendant's conduct must: (1) violate public policy; (2) be so oppressive that the consumer has little choice but to submit; and (3) cause consumers substantial injury." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Unfairness is determined by weighing

11

all three factors in a particular case. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 961 (Ill. 2002).

Gritters pleads these elements in entirely conclusory fashion and provides no factual enhancement for these allegations. (*See* Compl. ¶¶ 126-130). For instance, Gritters alleges that "[t]he Servicers' conduct offends public policy as it demonstrated an industry-wide practice of charging unearned fees" but fails to provide even a single fact to substantiate this purported "industry-wide practice." (*Id.* ¶ 126). Gritters' bare allegations regarding oppressive conduct and substantial injuries to consumers are equally conclusory and without factual support. (*See id.* ¶¶ 128, 130). Gritters must provide more than these generic allegations to plausibly suggest she has a right to relief, and Count IV must be dismissed due to these fatal pleading deficiencies. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Robinson*, 775 N.E. 2d at 963-64 (dismissing ICFA claim where "[t]he complaint did not set out any factual underpinnings to support" the conclusion that the challenged conduct was unfair).

## IV. Count V Fails to State a Claim Under RESPA (Count V).

### A. Gritters does not identify any qualified written requests.

Count V alleges that Ocwen "failed to timely acknowledge receipt of, respond to, or conduct a reasonable investigation" in connection with qualified written requests Gritters allegedly sent to Ocwen. (Compl. ¶¶ 89, 143).[4] Under RESPA, a loan servicer must acknowledge and respond to a qualified written request ("QWR"). 12 U.S.C. § 2605(e)(1)-(2). A QWR must be sent *by a borrower or her agent* and must be *received* by a loan servicer and

---

[4] Gritters also alleges a violation of section 2609 of RESPA based on Ocwen's alleged conduct in connection with her escrow account. (Compl. ¶¶ 142, 147). But this claim fails as a matter of law because there is no private right of action under this section. *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir. 1982).

12

must identify the borrower and account and include a statement of the reasons for the borrower's belief that the account is in error or provide "sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(A)-(B). A QWR "must also request information relating to the "servicing" of the loan." *Moore v. F.D.I.C*, No. 08 C 596, 2009 WL 4405538, at *3 (N.D. Ill. Nov. 30, 2009); 12 U.S.C. § 2605(e)(1)(A).

Count V should be dismissed because Gritters has not provided any facts to support the conclusion that the written inquiries she allegedly sent to Ocwen meet these criteria. Gritters merely alleges in one conclusory sentence that she sent "numerous RESPA Qualified Written Requests" to Ocwen between April 2011 and September 2013. (Compl. ¶ 89).[5] But "this Court is not required to accept conclusory allegations as true." *Jeffries v. Wells Fargo Bank, N.A.*, No. 10-cv-5889, 2011 WL 5023396, at *5 (N.D. Ill. Oct. 19, 2011). Instead, Gritters must allege facts—not just legal conclusions—sufficient to suggest that her written inquiries were QWRs. *See Sindles*, 2012 WL 1899401 at *8 (where plaintiff alleged sending "numerous" QWRs to loan servicer but gave no specific examples, the court dismissed the RESPA claim as being "too vague" to give defendant "fair notice" of its grounds) (quoting *Twombly*, 550 U.S. at 555)). Dismissal is warranted on this basis.

### B. Gritters fails to allege any recoverable damages under RESPA.

Count V fails for the additional reason that Gritters has alleged no actual or statutory damages. A RESPA claim based on an alleged QWR violation must allege facts supporting one of two types of recoverable damages: (1) "actual damages to the borrower as a result of the

---

[5] Gritters alleges that the Illinois Attorney General sent "some" of the purported QWRs, but she has not pled that the Attorney General is her agent, so these written inquiries cannot be QWRs. (Compl. ¶ 89); 12 U.S.C. § 2605(e)(1)(A). Moreover, any written inquiries sent to Ocwen after loan servicing transferred to Nationstar on May 16, 2013 cannot—by definition—constitute QWRs. 12 U.S.C. § 2605(e)(1)(B).

failure" to respond; or (2) statutory damages "in an amount not to exceed $1,000" where "a pattern or practice of noncompliance" is shown. 12 U.S.C. § 2605(f)(1).

Recoverable actual damages must relate specifically to the RESPA violation asserted; it is impermissible to assert a RESPA claim for actual damages based on other underlying conduct that may or may not be independently actionable. *Byrd v. Homecomings Financial Network*, 407 F. Supp. 2d 937, 946 (N.D. Ill. 2005) (dismissing RESPA claim where the only damages alleged by plaintiff did not result from failure to respond to a QWR, but rather resulted from earlier, separate conduct by servicer). In connection with her RESPA claim, Gritters alleges that she "applied for and [was] denied credit due to the status of the subject loan on her credit report." (Compl. ¶ 97). But because Gritters does not allege that she was denied credit *as a result* of Ocwen's alleged QWR violations, her claim for actual damages fails. *See Byrd*, 407 F. Supp. 2d at 946.

RESPA permits plaintiffs to recover statutory damages only where they can show "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). But Gritters has not alleged—even in a conclusory fashion—that Ocwen has a "pattern or practice of noncompliance" with RESPA's QWR provisions and offers no allegations of noncompliance apart from Ocwen's conduct in connection with her particular loan. Dismissal is warranted on this additional basis. *See Cocroft v. HSBC Bank USA, N.A.*, No. 10 C 3408, 2014 WL 700495, at *6 (N.D. Ill. Feb. 24, 2014) (suggesting a pattern or practice cannot be established unless a plaintiff pleads facts regarding non-compliance with loans other than her own).

## V.     Count VI for Breach of Fiduciary Duty is Duplicative of Count I.

Gritters' breach of fiduciary duty claim should be dismissed with prejudice because it is entirely duplicative of Count I for breach of contract. "Courts have frequently found that claims for breach of contract and claims for breach of fiduciary duty are duplicative of one another and

14

must be dismissed." *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010). "Claims are duplicative if they are based upon the same operative facts and allege the same injury." *Kurtz v. Toepper*, No. 11 C 4738, 2012 WL 33012, at *1 (N.D. Ill. Jan. 6, 2012).

Here, the fiduciary duty claim is based on the same operative facts that underlie the breach of contract claim. (*Compare* Compl. ¶ 105(b), (h)-(j), (l)-(m)) *with id.* at ¶¶ 151-152). And Gritters' alleged injuries are identical for all the counts in the Complaint. (*See id.* at ¶ 100). Accordingly, Count VI is redundant and should be dismissed. *See Gillis*, 707 F. Supp. 2d at 795 (dismissing breach of fiduciary duty claim as redundant with breach of contract claim); *Beringer v. Standard Parking O'Hare Joint Venture*, No. 07 C 5027, 07 C 5119, 2008 WL 4890501, at *6-7 (N.D. Ill. Nov. 12, 2008) (dismissing fiduciary duty claim where "the determination of whether a fiduciary duty was breached [is] identical with determining whether the contract for the provision of services was breached").

## Conclusion

For these reasons, Ocwen Loan Servicing, LLC respectfully requests that the Court grant its Motion to Dismiss, issue an order dismissing Counts II and IV-VI of the Complaint with prejudice, and award to Ocwen any additional relief that it deems just and proper.

DATED: April 3, 2014                    **OCWEN LOAN SERVICING, LLC**

                                        By:   /s/ Chethan Shetty
Simon Fleischmann (6274929)                   One of Its Attorneys
*sfleischmann@lockelord.com*
Chethan G. Shetty (6300848)
*cshetty@lockelord.com*
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-1887
Fax: 312-896-6687

## CERTIFICATE OF SERVICE

  I, Chethan Shetty, an attorney, certify that I caused the foregoing Motion to Dismiss to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on April 3, 2014.

                       /s/ Chethan Shetty