DONNA M. GRITTERS,              )
                               )
            Plaintiff,          )
                               )
      v.                        )     No. 14 C 00916
                               )
OCWEN LOAN SERVICING, LLC;      )     Judge Edmond E. Chang
NATIONSTAR MORTGAGE, LLC;       )
FEDERAL HOME LOAN MORTGAGE      )
CORPORATION; and PIERCE &       )
ASSOCIATES, P.C.,               )
                               )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna M. Gritters filed a complaint [R. 1] against Defendants Ocwen Loan Servicing, LLC, Nationstar Mortgage, LLC, Federal Home Loan Mortgage Corporation, and Pierce & Associates, P.C. (for convenience, referred to as "Defendants" when appropriate to refer to them collectively), seeking damages for alleged breaches of contract, breaches of fiduciary duties, and violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Illinois Consumer Fraud Act (ICFA), 810 ILCS 505/1 *et seq.*, the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, and the Truth in Lending Act (TILA), 15 U.S.C. § 1640, associated with the collection of Gritters' mortgage payments.[1] Defendant Ocwen now moves to dismiss [R. 25] Counts Two (FDCPA), Four (ICFA), Five (RESPA), and Six (breach of fiduciary duty) of the complaint

---

[1] This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Gritters' state-law claims under 28 U.S.C. § 1367. Citations to the docket are indicated by "R." followed by the docket entry.

under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## I. Background

In evaluating the motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Gritters' favor. *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2079 (2011). Gritters is an Illinois resident, who defaulted on her monthly mortgage payments in June 2009. R. 1, Compl. ¶¶ 4, 23. On August 13, 2009, Ocwen acquired the servicing rights for Gritters' loan (which was owned by a third party at all relevant times). *Id.* ¶¶ 9, 24, 98. Ocwen filed a foreclosure action against Gritters on February 25, 2010. *Id.* ¶ 25. In March 2010, Gritters received a loan modification offer from Ocwen. *Id.* ¶ 26. The modification required Gritters to make an initial payment of $650.26 before April 1, 2010, and to agree to certain modifications to the terms of her loan obligations, in exchange for which her Note would become "contractually current." R. 1-3, Modification Agreement. Gritters accepted the modification agreement on March 20, 2010, and submitted her initial payment of $650.26 on March 29, 2010. Compl. ¶¶ 27, 35.

Gritters alleges that Ocwen incorrectly recorded her first payment as having been made on April 27, 2010—past the April 1 due-date set out in the modification agreement. *Id.* ¶ 36. Based on that mistaken premise, between April 1 and April 27, Ocwen assessed hundreds of dollars in fees and costs, which it deducted from Gritters' payments before applying those payments to principal, interest, and escrow. *Id.* ¶ 38. In other words, despite Gritters' timely acceptance of the loan modification, Ocwen continued to treat Gritters' loan as if it were in default. *Id.*

¶¶ 39, 40. In fact, although Gritters had been told that the foreclosure case against her had been dismissed after the modification agreement was executed, Gritters discovered in April 2011 that her home was still listed as "in foreclosure." *Id.* ¶ 56. On April 12, 2011, Ocwen sent Gritters a notice with "reinstatement" figures, claiming that Gritters owed $386.92 to cure a purported default. *Id.* ¶ 57. Gritters alleges that the $386.92 included April's monthly payment of $650.00, proving that she had actually *overpaid* her mortgage to date. *Id.* ¶¶ 57, 58. After Gritters made the payment, Ocwen sent Gritters a letter admitting that she was current on her payment and dismissed the foreclosure action—thirteen months after the loan modification. *Id.* ¶¶ 60-61.

In addition to fees and costs associated with a nonexistent default, Gritters also alleges that Ocwen overcharged her escrow account for property taxes and insurance costs that it did not actually pay. *Id.* ¶¶ 41-50. Specifically, for the 2010-2011 period, Ocwen notified Gritters that it had paid $6,401.09 for taxes and insurance from Gritters' escrow account, when the true amount was only $4,250.07. *Id.* ¶¶ 47, 49. Gritters alleges that Ocwen never returned the surplus. *Id.* ¶ 55. Moreover, Gritters alleges that Ocwen then attempted to charge her a $397.15 fee for the escrow shortage that Ocwen itself created with the overcharge. *Id.* ¶ 51. Similarly, for the 2011-2012 period, Gritters alleges that her escrow account should have had a positive balance of $645.93, but Ocwen again assessed an escrow shortage fee of $760.40 and treated her account as if it were in default. *Id.* ¶¶ 68-72. Following the 2012-2013 period, Gritters once again alleges that her escrow account should have had a positive balance that Ocwen never returned or applied to her mortgage contract, and that Ocwen continued to seek additional sums for escrow

and to cure a nonexistent default. *Id.* ¶¶ 80-82.

From April 2011 through September 2013, Gritters alleges that she sent numerous "qualified written requests" (under RESPA) to Ocwen regarding her account. *Id.* ¶ 89. Despite Ocwen's responses claiming to have investigated her account and verified its own accounting as accurate, Gritters alleges that Ocwen did not investigate anything in response to her queries or address its mismanagement of her escrow, the reasons for the alleged "shortages," the overcharging of taxes and insurance, the assessment of pre-modification charges to post-modification statements, withholding of escrow funds in excess of the one-sixth cushion, or the assessment of foreclosure charges one year *after* the loan modification. *Id.* ¶ 90. Instead, Ocwen reported Gritters' "default" to credit bureaus, affecting her ability to obtain credit. *Id.* ¶ 97.

In February 2014, Gritters filed this case against Ocwen and other parties associated with the collection of her mortgage loan payments. With regard to Ocwen specifically, the complaint alleges that Ocwen breached the parties' agreement (Count One), violated the FDCPA (Count Two), violated the ICFA (Count Four), violated the RESPA (Count Five), and breached its fiduciary duty to Gritters (Count Six). Ocwen now moves to dismiss Counts Two, Four, Five, and Six of Gritters' complaint.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555–56); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Ocwen argues that Counts Two, Four, Five, and Six of the complaint should be dismissed for failure to state a claim. With regard to Count Two, the FDCPA claims, Ocwen contends that it is not a debt collector, that the claims are time-

barred, and that Gritters has not identified any actionable attempts to collect a debt. R. 25, Def.'s Br. at 4-9. Regarding Counts Four and Six, Ocwen argues that Gritters' ICFA and breach-of-fiduciary-duty claims are duplicative of her breach-of-contract claim. *Id.* at 9, 14-15. Ocwen also argues that Gritters' ICFA claims fail because she has not adequately pled "deceptive practices" (under Rule 9(b)'s heightened pleading standard) or "unfairness." *Id.* at 11-12. As for Count Five, Ocwen argues that Gritters has not identified any qualified written requests or recoverable damages under RESPA. *Id.* at 12-14. Finally, regarding the complaint in its entirety, Ocwen contends that, by grouping Ocwen and Nationstar together in her allegations as "the Servicers," Gritters has failed to meet Rule 8(a)'s notice requirements. *Id.* at 4. Each issue is addressed in turn below.

## A. Rule 8(a) Pleading

At the outset, the Court addresses Ocwen's argument that the complaint fails to meet the notice requirements of Rule 8(a). Rule 8(a) requires that the complaint "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted). Ocwen contends that "Gritters largely ignores Rule 8 and generically lumps Ocwen together with Nationstar under the term 'Servicers' in the counts asserted against Ocwen." Def.'s Br. at 4.[2] It is true that individual counts recite allegations against

---

[2]In support of its Rule 8(a) argument, Ocwen cites *Shapo v. Engle, et al.*, No. 98 C 7909, 1999 WL 1045086, at *13 (N.D. Ill. Nov. 12, 1999), for the proposition that "[w]here there are multiple defendants, the complaint must notify each defendant of the specific act purportedly committed by the defendant, which justifies that defendant's inclusion in the particular count." Def.'s Br. at 4. The quoted portion of *Shapo* actually describes a Rule 9(b) standard. *See* 1999 WL 1045086, at *13. But, as will be discussed further below, Gritters has met that heightened pleading standard as well.

Ocwen and Nationstar collectively as "the Servicers," but in the context of the complaint as a whole, Ocwen is incorrect.

In the complaint, before getting to the allegations that refer to Ocwen and Nationstar collectively, Paragraphs 9 through 97 describe each defendant's *individual* conduct as it related to Gritters' loan. The factual allegations contained in those paragraphs are grouped by type of offense and time period, and include the specific dates of alleged misconduct, the dollar amounts involved, and the contents of each defendant's false representations. Paragraph 101 incorporates those factual allegations into each count of the complaint. Where Gritters' allegations apply to both Ocwen and Nationwide, the complaint refers to them collectively as "the Servicers"; but where one is charged with conduct that the other is not, the complaint identifies that defendant individually. *Compare* Compl. ¶ 114, *with id.* ¶ 116. In short, the complaint clearly puts each defendant on notice of the specific allegations against it. Ocwen's motion to dismiss on Rule 8(a) grounds is denied.

## B. Count Two: FDCPA

Count Two of the complaint alleges that Ocwen engaged in abusive and oppressive conduct, in violation of Section 1692d of the FDCPA, deceptive debt-collection practices, in violation of Section 1692e, unfair debt-collection practices, in violation of Section 1692f, and that Ocwen failed to send a proper validation notice after its initial communication with Gritters, in violation of Section 1692g(a). Compl. ¶¶ 109-114. Ocwen's individual arguments relating to each Section will be discussed below. But the Court first addresses Ocwen's broader contention that it is not a debt collector with respect to Gritters' modified loan.

# 1. Ocwen is a Debt Collector

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It also clarifies that not every entity involved in collecting a debt owed to another is a "debt collector" for purposes of the Act. In particular, the following are not debt collectors:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) *concerns a debt which was not in default at the time it was obtained by such person*; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F) (emphasis added). Because all of its relevant collection efforts were made under the superseding loan modification agreement, rather than the original defaulted note, Ocwen contends that it is not a debt collector. Def.'s Br. at 5-6.

In support, Ocwen relies primarily on the Seventh Circuit's holding in *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998). In *Bailey*, a homeowner defaulted on her mortgage loan but later executed a forbearance agreement that "temporarily supersede[d]" the defaulted loan. *Id.* at 386. When the homeowner brought a FDCPA claim against her loan servicer, the district court granted summary judgment in favor of the servicer, finding that it was not a "debt collector" under the FDCPA. *Id.* The Seventh Circuit affirmed, reasoning that:

debtors such as the Baileys end up with two agreements (the original one and the superseding forbearance agreement), making it important which one a creditor or his mortgage servicer seeks to collect. If he seeks to collect on the original note technically remaining in default—meaning it's revived because the debtor defaulted again under the new agreement—then he is a "debt collector" under the Act so long as the debt was in default at the time he obtained or purchased it. If on the other hand he seeks to collect on payments currently due under the new superseding agreement then he is not a "debt collector" under the Act (but more akin to a credit card company sending out monthly statements to its customers) because the debtor is not in default under that agreement.

*Id.* at 387, 389. Applying *Bailey*'s reasoning, Ocwen argues that, because it sought to collect on payments under the new modified loan agreement, it is not a debt collector.

Ocwen's argument is unpersuasive for two reasons. First, Ocwen overlooks the rationale behind the *Bailey* decision: specifically, *Bailey* distinguished between an original *defaulted* loan and a superseding *current* loan. *Id.* The Seventh Circuit found that the exception in Section 1692a(6)(F)(iii) applied in the context of the superseding agreement, "because the debtor [wa]s not in default under that agreement." *Id.* Here, crediting Gritters' version of the facts, from the very first payment Gritters made under the *new* agreement, Ocwen still treated Gritters' account as if it were in default.

On those allegations, Ocwen is more akin to the loan servicer in *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 537 (7th Cir. 2003). In *Schlosser*, homeowners brought a FDCPA claim against a loan servicer that had treated the homeowners' mortgage loan as if it were in default—even initiating foreclosure proceedings against the homeowner—when it turned out the homeowners had actually been current on their mortgage obligations. *Id.* at 535-36. Relying on *Bailey*, the loan servicer argued that it was not a debt collector because the

homeowners' loan had not truly been in default. *Id.* at 536-37. The district court agreed and granted the loan servicer's motion to dismiss. *Id.* at 535. But the Seventh Circuit reversed, holding that "[a]lthough, as in *Bailey*, the debt in this case was not actually in default, Fairbanks acquired it as a debt in default, and its collection activities were based on that understanding." *Id.* at 537. In other words, "the exclusion in § 1692a(6)(F)(iii) does not apply because Fairbanks attempted to collect on a debt that it asserted to be in default and because that asserted default existed when Fairbanks acquired the debt." *Id.* at 539.

Like the loan servicer in *Schlosser*, Ocwen attempted to collect on a debt that it asserted to be in default. Also as in *Schlosser*, Ocwen acquired Gritters' account when it actually was in default—which is the second reason that *Bailey* is distinguishable. The loan servicer in *Bailey* acquired the homeowner's loan *after* the forbearance agreement had been executed. 154 F.3d at 386. Thus, the loan in *Bailey* was not in default at the time it was acquired, placing it (and the loan servicer) firmly within the language of the Section 1692a(6)(F)(iii) exclusion. Here, there is no dispute that Ocwen acquired the servicing rights to Gritters' loan while it was in default. And Gritters alleges that Ocwen continued to treat her account as though it was in default for over a year. For those reasons, Gritters has adequately pled that Ocwen is a debt collector for the purposes of the FDCPA. Ocwen's motion to dismiss Count Two on the grounds that it is not a debt collector is denied.

### 2. Section 1692g(a)

Ocwen next argues that Gritters' claim under Section 1692g(a) of the FDCPA must be dismissed because it is time-barred. Section 1692g(a) requires a debt collector to send a consumer written notice of certain information within five days

after the initial communication with the consumer in connection with the collection of the debt. 15 U.S.C. 1692g(a). Gritters alleges that Ocwen violated Section 1692g(a) by failing to send some of that required information (known as a "validation notice") after its initial communication with Gritters. Compl. ¶ 114. As Ocwen points out, however, FDCPA claims are subject to a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). Gritters' complaint alleges that Ocwen began servicing her loan in August 2009 and filed a foreclosure action against Gritters in February 2010. Compl. ¶¶ 24-25. So, even if the later of the two dates were considered Ocwen's initial communication with Gritters, Ocwen's alleged failure to send a timely validation notice would still have occurred years before Gritters filed her complaint in February 2014.

Gritters contends that her Section 1692g(a) claim is subject to equitable tolling "as a result of Ocwen's concealment of information and its perpetual failure to verify the debt." R. 36, Pl.'s Resp. Br. But Gritters is wrong. As Ocwen argues, Gritters either received a timely debt-validation notice from Ocwen or she did not. R. 42, Def.'s Reply Br. If she did not, Ocwen's alleged concealment of information in future communications had no effect on Gritters' ability to recognize or bring a claim under Section 1692g(a). *See Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994) ("Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim."). Accordingly, Gritters' Section 1692g(a) claim is dismissed with prejudice.[3]

---

[3] Gritters seeks leave to amend her complaint to assert a violation of Section 1692g(b) against Ocwen. Gritters may, in a separate filing, seek leave to amend. For now, the Court will not consider the merits of a new claim asserted in response to Ocwen's motion to dismiss.

### 3. Section 1692d

Ocwen next seeks to dismiss Gritters' claim under Section 1692d of the FDCPA, which prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Gritters contends that Ocwen engaged in abusive and oppressive conduct by misrepresenting the status of her debt, attempting to collect illegal fees and costs not authorized by law, threatening foreclosure, falsely declaring an escrow shortage, assessing illegal foreclosure fees, and refusing to communicate clearly with Gritters or to respond to her inquiries. *See* Compl. ¶ 109; Pl.'s Resp. Br. at 7. Ocwen nevertheless argues that Gritters' Section 1692d claim must fail because Gritters has not identified any conduct that was (1) abusive, harassing, or oppressive, or (2) undertaken "in connection with the collection of a debt." Def.'s Br. at 7-8.

On Ocwen's first point, Gritters has adequately pled that Ocwen engaged in a course of conduct, the natural consequence of which was to abuse and oppress her. Albeit in *dicta*, the Seventh Circuit has stated that "a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a violation of sections 1692d and e." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 778 (7th Cir. 2007). Gritters' complaint alleges as much—and more. Ocwen argues that the proper focus of a Section 1692d claim should be on the *means*, rather than validity, of collection. But without the specific communications between Ocwen and Gritters (and without improperly subjecting the complaint to a fact-pleading level of detail), that is a determination the Court cannot yet make.

Whether Ocwen's alleged course of conduct rose to the level of abuse, harassment, or oppression is thus a question better left to the summary-judgment stage.

As for whether Ocwen engaged in conduct "in connection with the collection of a debt," the Seventh Circuit has made clear that "[n]either this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Indeed, "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Id.* at 385. Other relevant factors include whether the debtor is current on payments, the nature of the parties' relationship, and the purpose of a debt collector's communication. *Id.* at 385-86. Altogether, this fact-intensive inquiry is not properly resolved at the motion-to-dismiss stage. Construing the facts in Gritters' favor, the complaint adequately establishes that Ocwen acted in connection with the collection of a debt. For these reasons, Ocwen's motion to dismiss Gritters' Section 1692d claim is denied.

### 4. Sections 1692e and 1692f

Ocwen next argues that Gritters' claims under Sections 1692e and 1692f fail because Gritters has not identified any actionable attempts to collect her debt within the statute of limitations.[4] Def.'s Br. at 8-9. Section 1692e of the FDCPA prohibits the use of a "false, deceptive, or misleading representation or means in

---

[4]Ocwen also moves to dismiss Gritters' Section 1692e claims on the grounds that Ocwen's identified communication was not made in connection with the collection of a debt. *See* Def.'s Br. at 9. But for the reasons explained above regarding Gritters' 1692d claim, that argument is rejected.

connection with the collection of any debt." 15 U.S.C. § 1692e. Deceptive conduct includes falsely representing the character, amount or legal status of a debt; threatening to take any action that cannot legally be taken; communicating or threatening to communicate credit information which is known or which should be known to be false; and using a false representation or deceptive means to collect or attempt to collect a debt. *Id.* Ocwen contends that Gritters' 1692e claim is based on the statutory prohibition on falsely representing "the character, amount, or legal status of any debt." Def.'s Br. at 8. Because "the only communication from Ocwen identified in the entire Complaint that allegedly falsely represents the debt is a letter sent to Gritters on March 3, 2011," Ocwen contends that Gritters' 1692e claim is time-barred. *Id.* at 9.

If Gritters' 1692e claim were premised on that one statutory prohibition, and that one letter, the Court would agree with Ocwen. But Gritters alleges numerous forms of misconduct under several provisions of Section 1692e. *See* Compl. ¶ 110. For example, Gritters alleges that Ocwen "threaten[ed] foreclosure," which could fall under Section 1692e(5)'s prohibition on "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *See id.* She also alleges that Ocwen reported false information and reported Gritters' loan as delinquent to credit bureaus in violation of Section 1692e(8). *Id.* ¶ 111. Moreover, Gritters' allegations regarding Ocwen's false representation of her debt encompass more than the single letter on which Ocwen focuses; Gritters alleges that, as recently as April 2012 to March 2013, "Ocwen continued to send Gritters statements suggesting that she owed additional amounts for escrow and stating that she was in default." *Id.* ¶ 82. Because Nationstar acquired Gritters' debt from Ocwen in May 2013 and

sent her a notice, within weeks, claiming that her account was five months in default, *id.* ¶¶ 83-85, it is reasonable to infer (viewing the inferences in Gritters' favor) that Ocwen misrepresented the status of Gritters' debt right up until the time that it transferred servicing rights to Nationstar—well within the one-year statute of limitations. Accordingly, Ocwen's motion to dismiss Gritters' Section 1692e claim is denied.

Ocwen advances a similar argument with respect to Gritters' claim under Section 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Ocwen argues that "the focus on such claims is on the *means* used to collect the alleged debt—such as a collection letter—and 'merely initiating debt collection activities will not [suffice].'" Def.'s Br. at 9. (quoting *Fong v. Franklin Collection Serv., Inc.*, No. 12 C 16666, 2012 WL 3581171, at *4 (N.D. Ill. Aug. 16, 2012)). But once again, Ocwen unreasonably limits the scope of Gritters' claim. For the purposes of Section 1692f, unfair means include collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* That is precisely what Gritters alleges took place repeatedly over the course of thirty-eight months. Cases like *Fong*, absolving debt collectors of responsibility under Section 1692f for "simply providing the information required by § 1692g(a)," are wholly inapplicable. 2012 WL 3581171 at *4; *see also Turner v. J.V.D.B. & Assocs, Inc.*, 330 F.3d 991, 998 (7th Cir. 2003) ("[I]t would not logically follow for us to hold that, whenever a debt collector unlawfully attempts to collect a debt that is discharged in bankruptcy, or is otherwise unenforceable, its mere provision of the information

mandated by § 1692g(a) automatically creates further liability under § 1692f."). Ocwen's motion to dismiss Gritters' Section 1692f claim is denied as well.[5]

### C. Count Four: ICFA

Turning to Count Four, Ocwen moves to dismiss Gritters' Illinois Consumer Fraud Act (ICFA) claims because it contends that ICFA is not a remedy for purely private contractual disputes that do not impact the public generally. Def.'s Br. at 9-11. ICFA "is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier v. First Fed. Sav. & Loan Ass'n of Champaign*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992). Accordingly, the Illinois Supreme Court has held that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 801, 844 (Ill. 2005). The issue, then, is whether Gritters has pled "more" than a breach of contract.

Ocwen contends that she has not, arguing that Gritters' ICFA claims "are based on her reliance 'on the terms of the loan modification' and her expectation that 'contracts [should] be honored.'" Def.'s Br. at 10 (quoting Compl. ¶¶ 128, 133). But Ocwen once again presents an excerpt of Gritters' claim as though the excerpt comprises the claim as a whole. *See* Compl. ¶¶ 124-138. Beyond the contract-based allegations, Gritters alleges that Ocwen made outright misrepresentations as to the status of her loan, the amounts owed, and how her payments were applied. *See id.*

---

[5]Ocwen's time-bar argument as to Sections 1692e and 1692f is denied at this stage because Gritters has adequately pled that Ocwen engaged in deceptive and unfair practices within the statute of limitations. But it bears mention that Ocwen transferred servicing rights to Gritters' loan to Nationstar in May 2013, Compl. ¶ 16, and Gritters filed her complaint in February 2014. Accordingly, unless Gritters can establish that the statutory period should be extended, only conduct by Ocwen that occurred between February and May 2013 will be actionable.

¶¶ 132, 134-35. So the cases on which Ocwen relies, dismissing ICFA claims based on loan servicing errors or interpretations of contractual provisions, are distinguishable. Because Gritters' ICFA claim consists of more than a mere contract dispute, Ocwen's motion to dismiss Count Four on those grounds is denied.

Ocwen also moves to dismiss Gritters' ICFA claims because it contends that they are inadequately pled. Specifically, Ocwen argues that Gritters' "deceptive practices" claim does not meet Rule 9(b)'s heightened pleading standard, and that Gritters has not pled "unfairness" beyond conclusory allegations. Def.'s Br. at 11-12. With respect to the "deceptive practices" claim, Ocwen reiterates its argument that "muddled allegations against the 'Servicers' generally" are insufficient to state a claim. *Id.* at 11. But, as explained above, the complaint takes care to itemize the allegations against each Defendant individually in the factual background section, which is explicitly incorporated into Gritters' claims. *See* Compl. ¶¶ 9-101. By identifying which corporate entity engaged in deception, the nature of the deception, the specific time periods associated with specific deceptive practices, and the mode of communication (both mail and telephone) of those practices, Gritters has adequately alleged the who, what, when, where, and how of Ocwen's fraud. *See Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009). Any additional details can be uncovered in discovery.

As for the "unfairness" claim, to determine whether a business practice is unfair under the ICFA, a court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002). "All three criteria do not need to be satisfied to

support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 418 (citation omitted). Ocwen contends that Gritters pleads the requisite elements of an "unfairness" claim in "an entirely conclusory fashion and provides no factual enhancement for these allegations." Def.'s Br. at 12 (citing Compl. ¶¶ 126-130). Yet again, Ocwen fails to take into account the detailed factual background that precedes the claims. To begin with, an allegation that "[t]he Servicers' actions are immoral because overcharging Gritters for unearned fees, overcharging Gritters' escrow without providing a refund, and filing a wrongful foreclosure amounts to an undue hardship to the borrower and an equally undue profit for the Servicers," Compl. ¶ 127, is not merely conclusory. Moreover, that allegation— which could support an "unfairness" claim alone—is amply supported by the factual allegations laid out above in the complaint. For the purposes of a motion to dismiss, that is sufficient. Because Gritters has adequately pled both ICFA claims, Ocwen's motion to dismiss Count Four is denied.

### D. Count Five: RESPA

Ocwen moves to dismiss Count Five, Gritters' RESPA claim, because it contends that Gritters has not identified any (1) qualified written requests, or (2) recoverable damages under RESPA. Def.'s Br. at 12-14. RESPA imposes a duty on loan servicers to promptly acknowledge and respond to borrowers' qualified written requests (QWR) for information. 12 U.S.C. § 2605(e). "To be a [QWR], a written correspondence must reasonably identify the borrower and account and must 'include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer

18

regarding other information sought by the borrower.'" *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) (quoting Section 2605(e)(1)(B)). The complaint alleges that, "[b]eginning in April 2011 through September 2013, Gritters sent numerous RESPA [QWRs] to Ocwen." Compl. ¶ 89. Ocwen moves to dismiss Gritters' RESPA claim because it contends that Gritters' "one conclusory sentence" is not sufficient to establish that her written inquiries were in fact QWRs. Def.'s Br. at 13.

In support, Ocwen cites *Sindles v. Saxon Mortgage Servs., Inc.*, No. 11 C 7224, 2012 WL 1899401, at *7 (N.D. Ill. May 22, 2012) for the proposition that "where plaintiff alleged sending 'numerous' QWRs to loan servicer but gave no specific examples, the court dismissed the RESPA claim as being 'too vague' to give defendant 'fair notice' of its grounds." Def.'s Br. at 13. But Ocwen inaccurately describes the holding in *Sindles*. There, a complaint alleged that a plaintiff sent "numerous letter[s]"—not QWRs—to a loan servicer, and the district court found *that* allegation too vague to put the loan servicer on fair notice of the grounds on which the RESPA claim rested. 2012 WL 1899401, at *7. Here, Gritters clearly states that she sent numerous QWRs to Ocwen. As for what qualifies as a QWR, the Seventh Circuit has held that "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a [QWR] and respond accordingly." *Id.* "Any reasonably stated written request for account information can be a [QWR]." *Id.* In light of the low bar for attaining QWR status, and construing the facts in Gritters' favor, Gritters has adequately pled that her communications with Ocwen were QWRs.

In its reply brief, Ocwen also argues that "even if Gritters has sufficiently identified a QWR, she has pled herself out of court because she admits" (1) that "Ocwen responded to each QWR by claiming that it had investigated her account and verified its own accounting as accurate," and (2) that "there is no allegation that Ocwen did not timely respond to the purported QWRs" Def.'s Reply Br. at 11-12. Ocwen is mistaken on both points. The complaint alleges that—despite its representations to the contrary—Ocwen did not actually "make appropriate corrections" or "conduct[] an investigation" as required by Section 2605(e)(2). *See* Compl. ¶ 90. And, regarding timeliness, the complaint alleges that "[t]he Servicers failed to *timely* acknowledge receipt of, respond to, or conduct a reasonable investigation … in violation of RESPA." Compl. ¶ 143 (emphasis added). Ocwen's motion to dismiss Count Five on those grounds is denied as well.

Ocwen also moves to dismiss Gritters' RESPA claims on the grounds that Gritters has not identified any recoverable damages. A RESPA claim based on an alleged QWR violation must allege facts supporting one of two types of recoverable damages: (1) "actual damages to the borrower as a result of the failure" to respond; or (2) statutory damages "in an amount not to exceed $1,000" where "a pattern or practice of noncompliance" is shown. 12 U.S.C. § 2605(f)(1). Ocwen claims that Gritters' demand for actual damages fails because Gritters "does not allege that she was denied credit *as a result* of Ocwen's alleged QWR violations." Def.'s Br. at 14 (emphasis in original). But, once again, Ocwen construes Gritters' claims too narrowly. Gritters does claim the denial of credit as an actual damage in connection with Ocwen's RESPA violations. Compl. ¶ 97. But she also claims the more direct damages of monthly payment increases, overcharging of taxes and insurance,

wrongful assessment of pre-modification charges to post-modification statements, withholding of escrow funds, and the assessment of untimely foreclosure charges as a result of Ocwen's failure to investigate and correct the errors in its accounting. *Id.* ¶ 90. In other words, a reasonable inference arising from Gritters' allegations is that if Ocwen had investigated her account as she had requested, she would not have been subjected to the prolonged and repeated assessment of sums not owed. Thus, Gritters has adequately pled actual damages as a result of Ocwen's noncompliance.

As for statutory damages, Ocwen argues that Gritters "has not alleged—even in a conclusory fashion—that Ocwen has a 'pattern or practice of noncompliance' with RESPA's QWR provisions and offers no allegations of noncompliance apart from Ocwen's conduct in connection with her particular loan." Def.'s Br. at 14 (quoting 12 U.S.C. § 2605(f)(1)(B)). Gritters did not respond to either argument— that is, whether the complaint alleges a pattern or practice of noncompliance, and whether RESPA's statutory-damages provision requires a showing of violations with respect to *other* borrowers. Gritters' failure to respond results in a waiver of this theory, so Ocwen's motion to dismiss is granted on that theory of recovery.[6]

Ocwen's motion to dismiss is also granted as to Gritters' claim under Section 2609. As Gritters seems to concede, Section 2609 does not provide a private cause of action. Accordingly, Gritters' escrow-related claims under Section 2609 are dismissed with prejudice. In addition, Gritters' response brief alleges for the first time that Ocwen violated Section 2605(g) of RESPA. *See* Pl.'s Resp. Br. at 13-14. To

---

[6]If Gritters wishes to seek reconsideration on the statutory-damages issue, her reconsideration motion must explain both the merits of the theory and why she did not address it in response to Ocwen's motion to dismiss.

be clear, Gritters' complaint does not allege a violation of 12 U.S.C. § 2605(g), so Gritters' argument to that effect is disregarded.

### E. Count Six: Breach of Fiduciary Duty

Finally, Ocwen argues that Gritters' breach-of-fiduciary-duty claim (Count Six) should be dismissed because it is "duplicative" of Gritters' breach-of-contract claim (Count One). Def.'s Br. at 14-15. "A duplicative count may be properly dismissed." *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) (citing *Nagy v. Beckley*, 218 Ill. App. 3d 875, 879, 578 N.E.2d 1134, 1136 (1991)). In some circumstances, claims might be considered "duplicative if they are based upon the same operative facts and allege the same injury." *Kurtz v. Toepper*, No. 11 C 4738, 2012 WL 33012, at *1 (N.D. Ill. Jan. 6, 2012). Ocwen contends that both elements are met here.

It is true that some courts in this district have characterized claims for breach of contract and claims for breach of fiduciary duty "duplicative" of one another and dismissed one or the other. *See DeGeer*, 707 F. Supp. 2d at 795 (collecting cases). But the Illinois case-law (Illinois law governs on this issue of substantive law) upon which those cases rely dealt with a separate issue: whether claims for breaches of contract or fiduciary duty are duplicative of *malpractice* claims. *See, e.g., Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1270 (Ill. App. Ct. 2008) ("[P]laintiff's claims for breach of fiduciary duty and breach of contract were, in fact, duplicative of her claim for legal malpractice."); *Majumdar v. Lurie*, 653 N.E.2d 915, 921 (Ill. App. Ct. 1995) (affirming dismissal of claim for breach of fiduciary duty as duplicative of claim for legal malpractice); *see also Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 743 (7th Cir.

2004) (applying same Illinois-law principle in malpractice context). Indeed, the "same facts, same injury" test for determining whether claims are duplicative appears to derive from a malpractice-specific holding:

> [A]lthough an action for legal malpractice is conceptually distinct from an action for breach of fiduciary duty because not all legal malpractice rises to the level of a breach of fiduciary [duty], when, as in this case, the same operative facts support actions for legal malpractice and breach of fiduciary [duty] resulting in the same injury to the client, the actions are identical and the lat[t]er should be dismissed as duplicative.

*Majumdar*, 653 N.E.2d at 920-21 (citations omitted); *see also Nagy*, 578 N.E.2d at 879 (affirming dismissal of "ethical malpractice" claim as duplicative of legal malpractice). Put another way, if a complaint affixes more than one label (*e.g.*, malpractice and fiduciary-duty breach) on what is really—as a matter of substantive law and based on the allegations—*one* claim (in that example, one malpractice claim), then only the one claim survives.

In sum, the Court is not persuaded that relevant authority compels or even encourages the dismissal of a breach-of-fiduciary-duty claim as "duplicative" of a breach-of-contract claim—especially where Federal Rule of Civil Procedure 8(d) explicitly permits a party to plead alternative claims. Here, Gritters' contract and fiduciary-duty claims are comprised of different elements and there is no reason that they cannot be pled in the alternative. To be sure, if both claims proceed to trial and the *damages* sought are indeed duplicative, Gritters' potential recovery will be appropriately limited. But for now, Gritters has adequately stated a claim for breach of fiduciary duty, and Ocwen's motion to dismiss Count Six is denied.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [R. 25] is granted as to the Section 1692g(a) claim and the Section 1692f claim under Count Two (FDCPA),  and as to the Section 2609 claim and statutory-damages theory of recovery under Count Five (RESPA). The motion is denied as to Gritters' remaining FDCPA claims under Count Two (namely, Sections 1692d, 1692e, and 1692f) and as to Counts Four, Five, and Six.


ENTERED:


_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: December 31, 2014