# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DONNA M. GRITTERS; | ) | |
|                     Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| | ) | File No. 1:14-cv-916 |
|         v. | ) | |
| OCWEN LOAN SERVICING, LLC; | ) | JURY TRIAL DEMANDED |
| NATIONSTAR MORTGAGE, LLC; | ) | |
| FEDERAL HOME LOAN | ) | Hon. Jorge L. Alonso |
| MORTGAGE CORPORATION; AND | ) | |
| PIERCE & ASSOCIATES, P.C.;   Defendants. | ) | |
| | ) | |

**PLAINTIFF DONNA GRITTERS' MOTION
TO COMPEL AND FOR AN ORDER IMPOSING SANCTIONS AGAINST
DEFENDANT PIERCE AND ASSOCIATES, P.C. FOR ITS SUBSTANTIAL AND WILLFUL
ABUSES OF THE DISCOVERY PROCESS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37**

Plaintiff Donna Gritters ("Gritters") hereby moves this Court for an order compelling production and imposing sanctions against Defendant Pierce & Associates, P.C. ("Pierce") for its substantial and willful abuses of the discovery process pursuant to Federal Rule 37.

## INTRODUCTION

With respect to production requests that were propounded more than six months ago, Pierce has failed to meet its most basic obligations under Rules 26, 34, and 37. Pierce (a) has yet to produce a single document with a Bates label, (b) refuses to withdraw its general objections and boilerplate objections, (c) refuses to tender basic, discoverable materials that should have been disclosed and tendered under Rule 26 in June 2014, and (d) has made repeated false representations to the undersigned counsel to delay the discovery process.

The lynchpin of Gritters' complaint is that she obtained a loan modification from Ocwen Loan Servicing, LLC ("Ocwen") in 2010. [DKT #73.] Even though the loan was current, Ocwen proceeded with a foreclosure case for 13 additional months. Thereafter, Ocwen dismissed the

foreclosure case, and later sold the servicing rights to Nationstar Mortgage, LLC ("Nationstar"). Nationstar then filed a second wrongful foreclosure case against Gritters in 2014. Pierce represented both Ocwen and Nationstar in the two foreclosure cases.

Gritters has complained of wrongful charges and fees (including Pierce's attorney's fees) added to her loan, general servicing misconduct, unfair and deceptive practices, and a breach of fiduciary duty with respect to the management of her escrow account. Specific to Pierce, Gritters has complained that Pierce violated the Fair Debt Collection Practices Act ("FDCPA") for (a) failing to send the required debt validation notice, (b) making false representations as to who truly owned the loan, and (c) filing a foreclosure action without responding to Gritters' FDCPA dispute. Pierce has generally denied Gritters' allegations.

Since being served with production requests on September 9, 2014, Pierce has made a calculated decision to conceal discoverable information and "run out the clock" on Gritters over the last six months, in light of the fact discovery close date of May 29, 2015. In response to Gritters' production requests, Pierce has done nothing but email Gritters 44 separate, unorganized pdf documents covering several hundred pages, without any Bates labels. On top of that, Pierces' written responses do not identify which documents are responsive to which request. Gritters' counsel brings this motion as a last resort and after making repeated good faith attempts to reach an accord with Pierce's counsel. Pierce, represented by more than competent counsel, could not with a straight face claim that it believed 44 disorganized, separate pdf files without Bates labels – that included only cherry picked business records – was appropriate in any lawsuit.

**BACKGROUND**

1.  On September 9, 2014, Gritters propounded production requests upon Pierce.

2.  On November 4, 2014, Pierce provided Gritters written responses to the requests to produce, but did not produce any documents. *See* Exhibit A attached hereto.

3.  None of the written responses identified which documents, if any, were responsive to each request. *Id*.

4.  Additionally, Pierce relied on general boilerplate objections (applicable to all responses) and "copy and paste" boilerplate objections to the individual requests. *Id*.

5.  On November 12, 2014, Pierce emailed Gritters 12 separate pdf documents in 12 separate attachments. On November 17, 2014, Pierce emailed Gritters an additional 32 separate pdf documents in 32 separate attachments.[1]

6.  Of the 44 separate pdf files, nothing was organized or in chronological order, and none of the files included any Bates stamps.

7.  On December 11, 2014, Gritters sent Pierce a letter in accordance with Fed. R. Civ. P. 37(a)(1) and Local Rules 26.1(f) and 37.2 which outlined deficiencies in Pierce's production. The letter requested a "meet and confer." *See* Exhibit B attached hereto.

8.  Among other issues, the letter pointed out that (a) none of the 44 separate pdf files included any Bates stamps, (b) none of the written responses referenced any documents that were responsive to each request, (c) the documents produced appeared to be nothing more than old court filings, which were not responsive to virtually all of the requests, and (d) the complete set of invoices, bills, and account notes were not provided. *Id.*

---

[1] Presumably, Pierce cannot and will not dispute these facts. However, Gritters' counsel will bring the 44 separate pdf files to Court at presentment of this motion.

9. Gritters requested that Pierce (a) amend its responses to include all documents in a single production (as opposed to 44 separate, unorganized pdf files), (b) supplement its responses with all responsive documentation in its possession, (c) include Bates stamps on all documents, and (d) amend the written responses to identify which documents are responsive to each request. *Id*.

10. On December 16, 2014, Gritters' counsel (Zambon) conferred with Pierce's counsel (Penn) over the phone for approximately 25 minutes. During the call, Zambon explained the specific issues identified in paragraphs 8 and 9 above in detail.

11. Zambon spent approximately 5 minutes on each category and explained why the boilerplate objections were improper, why the organization and lack of Bates labeling were improper, why the written responses must refer to specific documents, and why Pierce had to produce a complete set of its records with respect to Gritters' file.

12. Since the deficiencies above would be indefensible in any lawsuit, Penn agreed to remedy the issues by December 22, 2014.

13. Unbeknownst to Zambon at the time, this "agreement" was the beginning of a series of misrepresentations and delay tactics that spanned three months.

14. On December 22, 2014, Penn emailed Zambon and requested an additional extension through December 23, 2014. Zambon did not object.

15. Pierce did not take *any* action for the next five weeks.

16. On February 5, 2015, Zambon and Penn again exchanged emails on the issue.

17. On February 6, 2015, Penn emailed Zambon and stated that he would provide amended responses as agreed.

18. On February 13, 2015, Penn emailed Zambon and stated that the amended responses, "should be out [the door]."

19. On February 17, 2015, Penn emailed Zambon and stated that, "I expected to get [the amended responses] tomorrow...I'll still try for tomorrow. Thursday at the latest."

20. Again, Pierce did not take any action whatsoever.

21. Zambon and Penn then set up another phone conference for February 20, 2015.

22. Penn canceled the phone conference via email on the morning of February 20, 2015.

23. On March 5, 2015, Penn emailed Zambon and stated that the amended responses would be sent out "tomorrow or Monday at the latest."

24. Notwithstanding all of the attempts by Zambon, and all of the representations by Penn, Pierce never sent any amended responses at any time through the date of this motion.

25. After consultation by phone and good faith attempts to resolve differences, the undersigned counsel was unable to reach an accord. Pierce has conducted its affairs in bad faith, and when presented with more than reasonable accommodations, Pierce took no action whatsoever, while making at least five false promises to complete discovery on December 22, 2014, February 6, 2015, February 13, 2015, February 17, 2015, and March 5, 2015.

26. Gritters would also note that the duration of Pierce's conduct substantially prejudiced Gritters' ability to move forward with meaningful depositions or complete all fact discovery by the May 29, 2015 close. Accordingly, Gritters requests that this Court enter an order of sanctions against Pierce as specified below and order the immediate production of all discoverable, non-privileged communications with corresponding Bates labels.

**STANDARD**

Federal Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense...." Relevant discovery includes "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 2006 WL 1069115, at *2 (N.D.Ill. Apr. 20, 2006) "A party may file a motion to compel discovery under Rule 37 where another party fails to respond to a discovery request or where the party's response is evasive or incomplete." *Id*. (citing Fed.R.Civ.P. 37(a)(2)-(3)).

**ARGUMENT**

**I. Improper Production, Organization, and Labeling**

Quite simply, Pierce's bulk production of unlabeled documents does not satisfy its obligations under Rule 34. The produced documents are neither organized nor labeled to correspond with each request, nor are the documents together in a single file. Additionally, nothing is in chronological order.

Rule 34 requires a party to organize and label responsive documents to correspond to the categories requested. "[A] party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b)(i). A party cannot "haphazardly produce documents without reference to which request the documents are produced." *Glover v. Bd of Educ. of Rockford Pub. Sch., Dist. 205*, 2004 WL 785270, at *2 (N.D.Ill 2004) (citing *Ferrito v. IKON Office Solutions, Inc.,* 2000 WL 1477188 (D.Kan.2000) (stating the production of

documents that were neither Bates stamped nor otherwise organized did not satisfy Rule 34)); *Stiller v. Arnold,* 167 F.R.D. 68, 71 (N.D.Ind.1996) (finding discovery sanctions were warranted where producing party failed to organize and label the documents it produced).

Here, the production was haphazard, unorganized, without Bates labels, and without reference to which request the documents were produced. *Id*. Nothing is provided in chronological order, as there are 44 independent pdf files without any designation or explanation. On the most basic level, these documents could not be kept in this fashion in the ordinary course of business. Coupled with the fact that Pierce falsely claimed on numerous occasions since December 2014 that the complete production was "out the door" or would be produced "tomorrow at the latest," can only be inferred as an intentional and deliberate failure to comply with basic discovery rules.

## II. Improper General and Boilerplate Objections

In Pierce's written responses, Pierce set forth seven general, boilerplate objections, and then incorporated each general objection in each of its individual responses. *See* Exhibit A. Additionally, Pierce set forth additional boilerplate objections in response to each individual request. *Id*. The identical boilerplate objections to every request based on vagueness, overly broad, burdensome, and relevancy grounds are improper. The burden that rests with the party opposing discovery "cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors Corp*., 2006 WL 2325506, at *7 (N.D.Ill. 2006) (quotes omitted) (collecting cases rejecting generalized and boilerplate objections). More importantly, the

objections make it impossible to determine whether Pierce is withholding documentation subject to any one or more of the boilerplate objections. *Id*.

### III. Insufficient Production

Taking into consideration the improper organization, labeling, and objections, it is also impossible for Gritters to determine exactly what documentation has been withheld. However, in this motion, Gritters can point to several specifics. What is clear is that Pierce did withhold some of its business records that are critical to this lawsuit and damning to its entire defense theory in this case.

First, Pierce has provided an incomplete set of its *own* correspondence to Gritters; Gritters knows this because Gritters produced more of Pierce's correspondence in discovery than Pierce produced to Gritters. For example, Pierce withheld its own initial communication to Gritters dated September 16, 2013 after Pierce was hired by Nationstar. *See* Exhibit C attached hereto. This letter, in itself, proves Pierce's violation of FDCPA section 1692g(a).[2] While it is likely that other documents were also withheld, it can at least be inferred that Pierce's failure to produce *the one* document that conclusively establishes an FDCPA violation was intentional.

Second, Pierce did not produce its (a) contractual agreements with Ocwen and Nationstar, (b) complete set of bills and invoices on Gritters' file, or (c) the complete set of account notes (the notes end on May 26, 2011). Clearly, the entire set of correspondence, entire contractual agreement, and entire set of invoices and bills are discoverable and in Pierce's possession. These documents will clarify what charges were made on Gritters' account with respect to attorney's fees and costs. The complete notes log will demonstrate if and how Pierce handled Gritters' loan

---

[2] Although not the point of this motion, after Pierce's initial communication with Gritters, Pierce is required to send Gritters a "debt validation notice" within 5 days as required by FDCPA section 1692g(a). Pierce *did* produce a debt validation notice that is dated October 25, 2013. This is well outside of 5 days from the September 16, 2013 letter identified above – thus, Pierce's desire to withhold the September 16, 2013 communication and then claim that the initial communication occurred on October 25, 2013.

file, what correspondences were sent, and on what dates. Pierce is required to provide all of its discoverable correspondence and business records for purposes of both authentication and so Gritters can verify that she has all discoverable evidence. Any claim by Pierce that it does not have its own records is unrealistic.

### IV. Appropriate Sanctions

Under Rule 37(a)(4)(A), sanctions are appropriate unless the party's nondisclosure was "substantially justified." In addition, Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." *Musser v. Gentiva Health Serv.,* 356 F.3d 751, 755 (7th Cir.2004).

Pierce's conduct in the discovery process was far from justified or harmless, based only on the timing, duration, and concealment of evidence. It should be noted that Pierce was required to maintain the documents described above and to preserve them as material evidence. *Jones v. Bremen High Sch. Dist. 228,* 2010 WL 2106640, at \*6 (N.D.Ill. 2010) (duty to preserve evidence arises when a reasonable party would anticipate litigation). As Pierce was hired for the purpose of litigation, it was obligated to maintain records relevant to Gritters' loan account. *Id.*

The intentional failure to disclose is properly remedied by an order compelling discovery, an award of sanctions, and appropriate attorney's fees for filing the motion. Fed. R. Civ. P. 37. Pierce's conduct "is not a minor procedural violation," nor "substantially justified," but a deliberate attempt to conceal relevant, damning information surrounding Gritters' loan account. *Jones*, 2010 WL 2106640, at \*6 (N.D.Ill. 2010).

In an analogous situation in *Jackson v. N'Genuity*, the court stated:

> No litigant has the right to disregard its opponent's letters or telephone calls designed to further discovery or to evade answering discovery in a straightforward and responsive way. Quite the contrary; all parties are equally obligated to participate fairly and cooperatively in discovery. The concept of trial by ambush has long ago fallen into desuetude in both state and federal courts. Modern discovery practices seek to facilitate (however haltingly and ineffectively) open and even-handed development of the relevant facts so that cases may be decided on their merits. Unfortunately, the conduct of the defendants continues to be unfaithful to these obligations. At the over two hour hearing on the motion to compel today, I expressed the view that I have shared with parties at various times over the past several months, namely that the defendants have utterly failed to comply with their discovery obligations. Rather, at almost every turn, they have attempted to frustrate discovery and to conceal critical information. The most dramatic example involves the claim that there were no accounting or equivalent records for the corporate defendant...either in digital or paper form for an eight to nine year period, even though the company was bringing in many millions of dollars annually. I had expressed the view that the representation that there were no records was 'inherently incredible,' and no court is bound to accept inherently incredible evidence. Ultimately, my dubiety proved to have some foundation and following a court-ordered forensic examination of the defendants' computers, the untruth of the repeated representations that there were no accounting records was revealed. This is not an isolated instance but one of many examples of the intransigence that has marked discovery in this case.

2011 WL 113702, at *1 (N.D.Ill. 2001) (Hon. Mag. Cole) (citations omitted).

Similarly here, Pierce (a) effectively disregarded discovery calls and letters, (b) failed to facilitate open development of the relevant facts, (c) frustrated discovery, concealed grave information, and was unfaithful to its discovery obligations, and (d) failed to produce complete documentation. For Pierce to spend three months repeatedly promising completed discovery responses by "tomorrow at the latest" – while never taking any action – and then claim inadvertence is "inherently incredible." *Id*.

This Honorable Court should not accept Pierce's inherently incredible story either, and instead, draw a negative inference based on the facts presented in this motion. Pierce has made no effort to explain their positions on these issues, and the burden remains with Pierce.

Accordingly, based on the timing and duration of these actions by Pierce, their purposeful intent to deceive and thwart the discovery process, and the May 29, 2015 discovery close date, this Court should impose sanctions against Piece.

Gritters would suggest that there are several appropriate sanctions for this type of conduct, the most serious being the striking of Pierce's answer and affirmative defenses and the entry of a default. Fed. R. Civ. P. 37(c)(1)(C); 37(b)(2)(A)(i)-(vi). Lesser sanctions could include spoliation instructions, drawing an adverse inference against Pierce based on the withheld communications, and designating Gritters' version of the facts established for the purposes of her claims. *Id.*

WHEREFORE, Plaintiff Gritters prays for an order compelling the production of all documents and all other sanctions requested in this motion any other just and equitable relief.

                                      Respectfully Submitted,

                                      By: ___/s/Ross M. Zambon___
                                                  Attorney for Plaintiff

Sulaiman Law Group, Ltd.
Ross M. Zambon – ARDC # 6294149
Mara A. Baltabols – ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523