**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONNA M. GRITTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14 CV 0916 |
| | ) | |
| OCWEN LOAN SERVICING, LLC; | ) | Hon. Jorge L. Alonso |
| NATIONSTAR MORTGAGE LLC; | ) | |
| FEDERAL HOME LOAN MORTGAGE | ) | |
| CORPORATION; AND PIERCE & | ) | |
| ASSOCIATES, P.C.; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT NATIONSTAR MORTGAGE LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant, Nationstar Mortgage LLC's ("Nationstar"), by and through its attorneys

Dykema Gossett PLLC, and for its answer to Plaintiff's First Amended Complaint states:

## NATURE OF THE ACTION

1.      Plaintiff DONNA M. GRITTERS ("Gritters") brings this action for damages from breach of contract, breach of fiduciary duty, and violations of the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Truth in Lending Act ("TILA").

**ANSWER:   Nationstar admits that Plaintiff purports to bring this action for alleged damages from an alleged breach of contract, breach of fiduciary duty, and violations of the FDCPA, the ICFA, RESPA, and TILA, but Nationstar denies violating the FDCPA, the ICFA, RESPA, and TILA and denies all remaining allegations in this paragraph.**

2.      All of the claims stated herein stem from the wrongful servicing, debt collection, and loss mitigation activities related to Gritters' mortgage loan.

**ANSWER:   Nationstar admits that Plaintiff purports to allege claims stemming from the servicing, debt collection, and loss mitigation activities related to her loan, but denies Plaintiff has stated any claims, denies any wrongdoing with respect to servicing, debt collection, and loss mitigation of Plaintiff's loan, and denies all remaining allegations in this paragraph.**

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Gritters resides in this District and the events occurred in this District.

**ANSWER:   Nationstar denies that this Court has subject matter jurisdiction over any claims that accrued prior to Plaintiff filing for Chapter 7 bankruptcy protection on September 29, 2010. Nationstar admits the remaining allegations in this paragraph.**

## PARTIES

4.      Plaintiff Gritters is a natural person who resides at 3018 182nd Place, Lansing, IL 60438 ("subject property"). The subject property is Gritters' primary residence.

**ANSWER:   Nationstar admits Plaintiff is a natural person, but is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

5.      Defendant OCWEN LOAN SERVICING, LLC ("Ocwen") is a Florida corporation with its principal place of business in Florida. Ocwen is a foreign company in the business of servicing loans and debt collection across the country, including in the state of Illinois.

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

6.      Defendant NATIONSTAR MORTGAGE, LLC ("Nationstar") is a Delaware corporation with its principal place of business in Texas. Nationstar is a foreign company in the business of servicing loans and debt collection across the country, including in the state of Illinois.

2

**ANSWER:** **Nationstar admits that it has its principal place of business in Texas and conducts business in Illinois, which business includes servicing loans. Nationstar denies the remaining allegations in this paragraph.**

7.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac") is a government-sponsored enterprise with its headquarters in Virginia. Freddie Mac is the purported creditor/owner of the subject loan.

**ANSWER:** **Nationstar admits Freddie Mac is a government sponsored enterprise with its headquarters in Virginia and is the current owner of the subject loan. Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

8.      Defendant PIERCE & ASSOCIATES, P.C. ("Pierce") is a law firm authorized to do business in the state of Illinois. Pierce is in the business of collecting debts from Illinois residents on behalf of third-party creditors, servicers, and debt collectors.

**ANSWER:** **Upon information and belief, admitted.**

## INTRODUCTION

9.      In 2003, Gritters executed a mortgage loan in the amount of $59,900.00 in favor of Taylor, Bean & Whitaker for the purchase of the subject property. *See* Exhibit A attached hereto is a true copy of the mortgage; *see also* Exhibit B attached hereto is a true copy of the note.

**ANSWER:** **Nationstar admits that the mortgage attached reflects Plaintiff obtained a mortgage from Taylor, Bean & Whitaker in 2003 in the amount of $59,900.00. The documents attached as Exhibit A and Exhibit B speak for themselves. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the documents.**

10.      Ocwen filed foreclosure against Gritters on February 25, 2010 after a payment default.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

3

11.     On April 1, 2010, Gritters obtained a loan modification from Ocwen.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

12.     Since that date through the filing of this lawsuit, Gritters has tendered all of the monthly payments as required under the loan modification. Most months Gritters overpaid her mortgage by $25 to $150.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph with respect to the time period before May 16, 2013. Nationstar denies the allegations in this paragraph as they pertain to the time period beginning May 16, 2013.**

13.     After the loan modification, Ocwen continued to treat the loan as if it were in default.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

14.     Ocwen failed to properly account for Gritters' payments or update its records to reflect the terms of the modification. Ocwen perpetually mishandled Gritters' escrow account, substantially overcharged Gritters for taxes and insurance, and failed to apply or manage the escrow funds in compliance with the provisions of RESPA and the mortgage contract.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

15.     Moreover, Ocwen failed to notify its foreclosure attorneys that a modification was in effect. Ocwen continued to charge Gritters for foreclosure fees for thirteen additional months.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

16.     Nationstar purchased the servicing rights from Ocwen in May 2013. Nationstar continued to treat the loan as if it were in default and continued to mishandle Gritters' escrow account.

**ANSWER:** **Nationstar admits that it purchased the servicing rights from Ocwen in May 2013 and that, based upon the records and information of Ocwen, as of that time, Plaintiff's loan was in arrears with payments due since the February 1, 2013 monthly payment. Nationstar denies any implication from this paragraph that Nationstar's treatment and handling of the loan were wrongful and denies that it mishandled Plaintiff's escrow account. Nationstar denies any remaining allegations in this paragraph.**

17.     Gritters made countless "Fair Debt Disputes" and sent numerous "Qualified Written Requests" to both Ocwen and Nationstar. Ocwen and Nationstar justified their conduct without any good faith basis and without conducting a reasonable investigation.

**ANSWER:** **This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

18.     On October 25, 2013, Pierce sent Gritters a debt validation letter stating that it had been hired by Nationstar to commence foreclosure proceedings. On November 11, 2013, Gritters sent a letter to Pierce disputing the validity of the debt and denying the default. Pierce did not verify the debt before filing a second foreclosure against Gritters on January 22, 2014.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

### FACTS SUPPORTING CAUSES OF ACTION

19.     The subject loan required that Gritters make monthly payments of principal, interest, and escrow for taxes and insurance. *See* Exhibit A at ¶ 2.

**ANSWER:** **The mortgage attached as Exhibit A speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the mortgage.**

20.     Any payments were to be allocated (a) first to pay interest due, (b) second to pay principal due, (c) third to fund the escrow account, (d) and fourth to pay any other amounts due, with any remaining amounts to reduce the principal balance. *Id.* at ¶¶ 2-3.

**ANSWER:   The mortgage attached as Exhibit A speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the mortgage.**

21.     Gritters' mortgage stated that funds in the escrow account (taxes and insurance) were not to exceed the amount allowed under RESPA (the "1/6th cushion"). *Id.* at ¶ 3.

**ANSWER:   The mortgage attached as Exhibit A speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the mortgage.**

22.     Any surplus in Gritters' escrow account at the end of the escrow year was to be refunded or applied in accordance with RESPA. *Id.*

**ANSWER:   The mortgage attached as Exhibit A speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the mortgage.**

**a.      The First Foreclosure Case & Loan Modification**

23.     Gritters defaulted on her monthly payment obligations in June 2009.

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

24.     On August 13, 2009, Ocwen acquired the servicing rights for the subject loan.

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

25.     On February 25, 2010, Ocwen filed a foreclosure action against Gritters.

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

26.     In March 2010, Gritters received a loan modification offer from Ocwen as the servicer on behalf of the owner of the loan.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

27.     Ocwen represented to Gritters over the phone that the foreclosure action would be dismissed upon receipt of the signed modification and the initial payment. Ocwen also represented that her loan would be current and no additional fees would be owed.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

28.     On March 20, 2010, Gritters accepted the loan modification by signing the agreement and sending a copy to Ocwen. *See* Exhibit C attached hereto is a true copy of the loan modification.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

29.     The terms of the loan modification were as follows:

    i       New Principal Balance of $62,691.34;

    ii      Initial Payment of $650.26 due on 4/1/10;

    iii     New Monthly Payments of $624.26 beginning on 5/1/10;

    iv      5.0% fixed interest rate; and

    v       40 year loan, maturity date: 3/1/50. *Id.*

**ANSWER:     The loan modification speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the loan modification.**

30.     The monthly payments of $624.26 were comprised of $302.30 for principal and interest, and $321.96 for escrow (taxes and insurance).

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

31. The loan modification increased Gritters' principal balance to $62,691.34 by adding nine payments of approximately $700.00 and an "escrow adjustment" of $1,014.26. These added payments and fees brought Gritters' loan and escrow account current. *Id.*

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

32. The loan modification stated:

> "You agree that the new principal balance due under your modified Note and the Mortgage will be $62,691.34. *Upon modification, your Note will become contractually current*; however fees and charges that were not included in this principal balance will be your responsibility."

*Id.* at ¶ 1. (Emphasis added.)

**ANSWER:** **The loan modification speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the loan modification.**

33. The loan modification did not list any outstanding or accrued fees and costs. Gritters was advised that she did not owe additional fees and charges.

**ANSWER:** **The loan modification speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the loan modification and is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

34. Gritters relied upon the representation that her loan was current when she accepted the modification and relied upon the representation that the foreclosure case would be dismissed.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

35. Gritters made her first payment of $650.26 on March 29, 2010; the loan was modified.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

36.     Although the first loan modification payment was made timely, Ocwen incorrectly imputed the first payment into its computer system as being made on April 27, 2010 and imputed the effective date of the loan modification into its computer system as April 27, 2010.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

37.     In the intervening period between April 1, 2010 and April 27, 2010, Ocwen assessed hundreds of dollars in unearned fees and costs.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

38.     When Ocwen applied Gritters' payments on April 27, 2010, it deducted amounts for unearned fees and costs before applying her payments to principal, interest, and escrow.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

39.     Ocwen continued to treat the loan as if it were in default by applying Gritters' payments to pre-modification charges, including taxes, insurance, foreclosure fees, and costs.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

40.     Without sending notice to Gritters, Ocwen assessed penalties, increased Gritters' monthly payment amount, and recorded her loan as past due.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**b.     Escrow April 2010 through March 2011**

41.     Ocwen failed to adjust Gritters' escrow account at the onset of her loan modification. Instead, Ocwen artificially increased the actual amounts owed for fees, taxes, and insurance.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

42.     Pursuant to the loan modification, Gritters' escrow account was fully funded and contractually current on April 1, 2010. *Id.*

**ANSWER:     The loan modification speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the loan modification and is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

43.     On April 1, 2010, Gritters' escrow account had a balance of $1,571.77.[1]

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

44.     From April 2010 to March 2011, Gritters' payments to Ocwen totaled $8,006.50. Of the $8,006.50, a total of $3,627.60 was allocated to principal and interest ($302.30 x 12 months).

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

45.     Per the mortgage contract, the remaining $4,378.90 ($8,006.50 - $3,627.60) should have been allocated to escrow. *See* Exhibit A at ¶¶ 2-3.

**ANSWER:     The mortgage speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the mortgage and is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

46.     In addition to the beginning balance of $1,571.77, the total amount allocated to escrow from April 2010 to March 2011 should have been $5,950.67 ($1,571.77 + $4,378.90).

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

---

[1] Based on Ocwen's own Annual Escrow Account Disclosure Statement.

**ANSWER: Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

47.     Between April 2010 and March 2011, Gritters owed a total of $3,272.07 for real estate taxes and a total of $978.00 for insurance. The total amount actually paid from Gritters' escrow account for taxes and insurance was $4,250.07 ($3,272.07 + $978.00).[2]

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

48.     Therefore, as of March 2011, Gritters' escrow account should have had a positive escrow balance of $1,700.70 ($5,950.67 - $4,250.07).

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

49.     However, on March 9, 2011, Ocwen sent Gritters a notice that Ocwen had paid *$4,550.09* for her property taxes and *$1,851.00* for hazard insurance. In total, Ocwen claimed to have paid *$6,401.09* ($4,550.09 + $1,851.00) for taxes and insurance from Gritters' escrow account.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

50.     These numbers were artificially inflated and grossly inaccurate.[3]

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

51.     The above notice misrepresented the actual amounts paid, and inflated Gritters' true obligations for taxes and insurance by over $2,000.00 for this time period. As a result of the inflated numbers, Ocwen assessed an escrow "shortage" of $397.15 in March 2011.

**ANSWER:     Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

---

[2] The second installment of real estate taxes for 2009 was for $1,559.58 and due by December 13, 2010. The first installment of real estate taxes for 2010 was for $1,712.49 and due by April 1, 2011.
**ANSWER:  Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

[3] Ocwen's own payment history confirmed that a total of $1,559.58 was paid for real estate taxes in December 2010 and $1,712.49 was paid for real estate taxes in March 2011. The payment history also confirmed that $978.00 in total was paid for insurance in January 2011.
**ANSWER:  Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

52.     Ocwen attempted to charge Gritters for the $397.15 escrow "shortage" the following year by increasing her monthly payment by $33.10 over the next 12 months ($397.15 / 12 months).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

53.     In reality, Gritters never had an escrow "shortage" and was not in default; the amounts paid were sufficient to cover all principal, interest, and escrow (taxes and insurance).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

54.     Ocwen's improper accounting forced Gritters into a perpetual state of "default."

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

55.     In March 2011, Gritters should have had an escrow balance of $1,700.70. Ocwen never returned or applied the $1,700.70 surplus in accordance with RESPA. This amount was well above the 1/6th annual escrow cushion allowable under RESPA. Ocwen continued to send Gritters statements that she owed additional amounts for escrow and that she was in default.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**c.     The Foreclosure Case and Gritters' "Reinstatement"**

56.     In April 2011, Gritters saw that her home was listed "in foreclosure" on real estate websites. She had been told that the foreclosure case was dismissed one year prior.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

57.     On April 12, 2011, Ocwen sent Gritters a notice with "reinstatement" figures. The notice claimed that Gritters owed a total of $386.92 to cure a purported default. The reinstatement figures *included* the monthly payment due for April 2011.[4]

---

[4] On April 2, 2011, Ocwen also sent a correspondence claiming $1,410.02 was due. On April 6, 2011, Ocwen sent a correspondence claiming $1,239.91 was due.

**ANSWER:** The document speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the document and are without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.

58.     Since April's monthly payment was approximately $650.00, a reinstatement amount of $386.92 confirmed that Gritters had overpaid her mortgage to date.[5]

**ANSWER:** Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

59.     Gritters paid the $386.92 to Ocwen on April 16, 2011.

**ANSWER:** Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

60.     On April 27, 2011, Ocwen sent a letter admitting that Gritters was current. On May 6, 2011, Ocwen dismissed the foreclosure action, thirteen months after the loan modification.

**ANSWER:** The document speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the document and are without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.

61.     Ocwen continued to charge Gritters for "foreclosure fees" and deducted those amounts from Gritters' monthly payments and escrow account. Ocwen continued to send notices stating that Gritters was in default and that her escrow account was underfunded.

---

**ANSWER**: Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

[5] Reinstatement by definition is a one-time payment to catch up on all the arrearages to make a loan current. By admitting that the total amount due in April 2011 was less than the scheduled April 2011 payment, Gritters was not actually behind on her loan.

**ANSWER**: Nationstar does not answer these allegations to the extent they seek a legal or semantic conclusion. To the extent an answer is required, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

     **d.    Escrow April 2011 through March 2012**

62.    On April 1, 2011, Gritters' escrow account should have had a balance of $1,700.70.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

63.    From April 1, 2011 through March 2012, Gritters made monthly payments to Ocwen that totaled $7,321.74. Of the $7,321.74, a total of $3,627.60 was allocated to principal and interest ($302.30 x 12 months).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

64.    The remaining $3,694.14 ($7,321.74 - $3,627.60) should have been allocated to escrow.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

65.    In addition to the beginning balance of $1,700.70, the total amount allocated to escrow from April 2011 to March 2012 should have been $5,394.84 ($1,700.70 + $3,694.14).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

66.    Between April 2011 and March 2012, Gritters owed a total of $3,689.94 for real estate taxes and a total of $1,058.97 for insurance.[6]

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

---

[6] The second installment of real estate taxes for 2010 was for $1,772.95 and due by November 1, 2011. The first installment of real estate taxes for 2011 was for $1,916.99 and due by March 1, 2012.

**ANSWER**:  **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

67. The total amount actually paid from Gritters' escrow account for taxes and insurance from April 2011 to March 2012 was $4,748.91 ($3,689.94 + $1,058.97).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

68. Therefore, as of April 2012, Gritters' escrow account should have had a positive escrow balance of $645.93 ($5,394.84 - $4,748.91).[7] However, Ocwen assessed an escrow "shortage" against Gritters in the amount of $767.40, notwithstanding the positive balance.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

69. Ocwen attempted to charge Gritters for the $767.40 escrow "shortage" the following year by increasing her monthly payment by $63.95 over the next 12 months ($767.40 / 12 months).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

70. In reality, Gritters never had an escrow shortage and was not in default; the amounts paid were sufficient to cover all principal, interest, and payments to escrow (taxes and insurance).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

71. Ocwen never returned or applied the $645.93 surplus in accordance with RESPA.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

72. Ocwen continued to send Gritters correspondence suggesting that she owed additional amounts for escrow and stating that she was in default.

---

[7] Ocwen's own payment history confirmed that a total of $1,772.95 was paid for real estate taxes in December 2011 and $1,916.99 was paid for real estate taxes in February 2012. The payment history also confirmed that a total of $1,058.97 was paid for insurance in January 2012.

**ANSWER:  Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

e. **Escrow April 2012 to March 2013**

73. Freddie Mac obtained ownership of the subject mortgage loan in April 2012.

**ANSWER:** **Upon information and belief, denied.**

74. On April 1, 2012, Gritters' escrow account should have had a balance of $645.93.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

75. From April 1, 2012 to March 2013, Gritters' payments to Ocwen totaled $8,360.88. Of the $8,360.88, a total of $3,627.60 was allocated to principal and interest ($302.30 x 12 months).

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

76. The remaining $4,733.28 ($8,360.88 - $3,627.60) should have been allocated to escrow.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

77. Including the beginning balance of $645.93, the total amount allocated to escrow from April 2012 to March 2013 should have been $5,379.21 ($645.93 + $4,733.28).

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

78. Between April 2012 and March 2013, Gritters owed a total of $3,083.03 for real estate taxes and a total of $1,207.11 for insurance.[8]

---

[8] The second installment of real estate taxes for 2011 was for $1,308.83 and due by August 1, 2012. The first installment of real estate taxes for 2012 was for $1,774.20 and due by March 1, 2013.

**ANSWER:** **Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

79.     The total amount actually paid from Gritters' escrow account for taxes and insurance from April 2012 to March 2013 was $4,290.14 ($3,083.03 + $1,207.11).[9]

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

80.     Therefore, as of March 2013, Gritters' escrow account should have had a positive escrow balance of $1,089.07 ($5,379.21 - $4,290.14).

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

81.     Ocwen never returned or applied the $1,089.07 surplus in accordance with RESPA or the mortgage contract. The amount was above the 1/6th cushion allowable under RESPA.

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

82.     Instead, Ocwen continued to send Gritters statements suggesting that she owed additional amounts for escrow and stating that she was in default.

**ANSWER:   Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**f.     April 2013 to Present and the Transfer of Servicing to Nationstar**

83.     On May 16, 2013, Nationstar purchased the servicing rights from Ocwen.

**ANSWER:   Admitted.**

84.     Nationstar made its initial communication with Gritters on May 28, 2013.

---

[9] Ocwen's own payment history confirmed that a total of $1,308.83 was paid for real estate taxes in July 2012 and $1,774.20 was paid for real estate taxes in February 2013. The payment history also confirmed that $1,207.11 in total was paid for insurance in January 2012.

**ANSWER:  Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**ANSWER: Nationstar admits the existence of correspondence to Plaintiff regarding a "Single Point of Contact" dated May 28, 2013. Upon information and belief and based upon the books and records of Nationstar, this correspondence was mailed to Plaintiff on May 31, 2013. Nationstar denies any remaining allegations in this paragraph that are inconsistent with the preceding.**

85.     On June 5, 2013, Nationstar sent Gritters a correspondence claiming that Gritters was in default for five (5) missed monthly payments and owed a total of $4,134.23. In short, Nationstar continued Ocwen's practices of collecting illegal charges, fees, and costs.

**ANSWER: Nationstar admits a Mortgage Loan Statement was sent to Plaintiff on June 5, 2013. The document speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the document and denies the remaining allegations in this paragraph.**

86.     On approximately June 10, 2013, Gritters phoned Nationstar to dispute the debt. Nationstar spoke with Gritters and acknowledged her dispute.

**ANSWER: Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

87.     Gritters was current and had continued to make her monthly payment to Nationstar each month in the amount of $760.08 to $788.64. On the date that Nationstar obtained servicing rights, Gritters should have had an escrow balance of $1,089.07.[10]

**ANSWER: Nationstar denies that Plaintiff was current on her loan and that she continued to make her monthly payment to Nationstar each month. Nationstar admits that Nationstar rejected some of Plaintiff's payments notifying her that her payment was insufficient to resolve her delinquency. Nationstar is otherwise without knowledge or**

---

[10] Beginning in August 2013, Nationstar began rejecting Gritters monthly payments. Through the filing of this lawsuit, Gritters continued to tender her payment each month to Nationstar.

**ANSWER: Nationstar denies that Plaintiff was current on her loan and continued to make adequate payments to Nationstar each month. Nationstar admits that Nationstar rejected some of Plaintiff's payments notifying her that her payment was insufficient to resolve her delinquency.**

information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.

88.    Notwithstanding the dispute, Nationstar continued to collect the debt and began charging Gritters $486.34 for escrow each month ($5,826.08 annually). This was more than the 1/6th cushion allowed under RESPA or the amount necessary to pay annual taxes and insurance.

**ANSWER:    This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against Nationstar and denies any implication that Nationstar violated the RESPA or engaged in improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

**g.    QWRs to Ocwen and Nationstar**

89.    Beginning in April 2011 through September 2013, Gritters sent numerous RESPA Qualified Written Requests ("QWRs") to Ocwen. Some of the QWRs were sent by Gritters and some were sent by the Illinois Attorney General on her behalf. Ocwen responded to each QWR by claiming that it had investigated her account and verified its own accounting as accurate.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

90.    Ocwen did not investigate anything in response to the QWRs. Ocwen did not address (a) its mismanagement of the escrow; (b) reasons for the monthly payment increases or the escrow "shortages;" (c) the overcharging of taxes and insurance; (d) the assessment of pre-modification charges to post-modification statements; (e) withholding escrow funds in excess of the 1/6th cushion; or (f) assessing of "foreclosure charges" one year *after* the modification.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

91.    Instead, Ocwen advised Gritters to contact a "certified accountant" if she had "difficulty understanding" the servicing of her mortgage by Ocwen.

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

92. On September 6, 2013, Gritters sent a QWR to Nationstar disputing the servicing of her loan, assessment of fees, and the amount that Nationstar claimed in arrears.

**ANSWER: This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies any implication that Nationstar engaged in improper or wrongful servicing of the loan. Further, based upon reasonable inquiry, Nationstar has been unable to locate a record of correspondence from Plaintiff dated September 6, 2013 in its possession and therefore is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

93. On September 23, 2013, Nationstar responded to the QWR and stated that:

    a.    Gritters' loan had been modified in April 2010;

    b.    At the time of the servicing transfer (5/16/13) the account was due for the February 1, 2013 monthly installment;

    c.    The payment Nationstar received on July 5, 2013 was applied to March 1, 2013;

    d.    Gritters' August 2013 payment was returned to her;

    e.    On August 1, 2013, Nationstar accelerated the loan;

    f.    The account was referred to foreclosure on September 9, 2013;

    g.    Gritters' loan is contractually due for April 1, 2013; and

    h.    Freddie Mac was the owner/creditor of the subject loan.

**ANSWER: This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar admits that it sent correspondence dated September 23, 2013 to Ms. Lipski, Citizen's Advocate, Consumer Protection Division at the Illinois Attorney General's Office responding to Ms. Lipski's September 3, 2013 correspondence. Further answering, that document speaks for**

itself. **Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the document.**

94.      In reality, Nationstar did not investigate anything in response to the QWR. Nationstar merely attached a very basic and inaccurate payment history to its response without explanation.

**ANSWER:   This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, the allegations are denied.**

95.      Nationstar did not address its mismanagement of escrow, reasons for the monthly payment increases, the escrow "shortages," the overcharging of taxes and insurance, or the assessment of pre-modification charges to post-modification statements.

**ANSWER:   Denied.**

96.      Instead, the payment history established that Nationstar assessed $272.16 in late charges and $*227.50 for 22 property inspection fees in a single day.*

**ANSWER:   Nationstar states that it is unable to admit or deny what the payment history established because the allegations are vague as to what payment history it is referring. To the extent an answer is required, however, Nationstar admits that as of September 18, 2013, Plaintiff owed $272.16 in late charges. Nationstar denies the remaining allegations in this paragraph.**

## CAUSES OF ACTION

97.      Gritters has a valid and enforceable mortgage contract with (a) Freddie Mac as the creditor/owner of the subject loan, (b) Ocwen because the loan modification was executed between Ocwen and Gritters, and (c) Nationstar as the assignee of Ocwen (Ocwen and Nationstar collectively referred to as the "Servicers").

**ANSWER:   Nationstar admits only that Plaintiff has a mortgage, Freddie Mac is the current owner of Plaintiff's loan that is the subject of this case, Nationstar was previously the servicer of the loan, and Ocwen was the servicer of the loan prior to Nationstar. Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph as they pertain to**

Ocwen. **This paragraph otherwise asserts legal conclusions for which no answer is required.**

98.     The Servicers are agents of Freddie Mac, and Freddie Mac is the principal of the Servicers. Therefore, Freddie Mac is liable for the acts and causes of action against the Servicers.

**ANSWER:     This paragraph otherwise asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, they are denied.**

99.     Gritters has suffered damages of illegal fees, charges, interest, being denied credit, remaining in a perpetual state of "default," emotional distress, mental anguish, physical illness, loss of time, and the loss of the misapplied payments. All of these damages were proximately caused by the conduct of the Defendants described herein.

**ANSWER:     Denied.**

100.     Gritters restates each and every allegation set forth in this complaint as if fully alleged in each count of this complaint.

**ANSWER:     Nationstar incorporates by reference its answers to paragraphs 1 through 99 to each count of this complaint.**

**COUNT I – BREACH OF CONTRACT**
**(AGAINST OCWEN, NATIONSTAR, AND FREDDIE MAC)**

101.     Gritters fully performed her duties under the contract by tendering all monthly payments to the Servicers and by complying with all of the other terms of the contract.

**ANSWER:     Denied.**

102.     The mortgage contract sets forth, "[i]f there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA." *See* Exhibit A at ¶ 3.

**ANSWER:     The mortgage speaks for itself. Nationstar otherwise denies any characterization in this paragraph inconsistent with the terms of the mortgage.**

103.     The Servicers breached the contract when they (a) charged and maintained deposits in Gritters' escrow account above the limits allowed by Gritters' mortgage contract or the 1/6th cushion under RESPA, (b) implemented an "escrow shortage or deficiency" without providing notice or producing documentation to substantiate the shortage prior to collection, (c) failed to send notice of the escrow increase or conduct an accurate annual escrow analysis before imposing fees to Gritters' escrow account, (d) failed to provide any notice of the escrow shortage

until *after* it had charged the amount to Gritters' account and deducted it from the escrow, and (e) failed to refund a escrow surplus over $50.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

104.    The Servicers and Freddie Mac are in further material breach of contract for their:

      a.    failure to accept Gritters' mortgage payments;

      b.    failure to credit and apply Gritters' payments as required by the contract;

      c.    assessment of unauthorized late fees, legal fees, costs, & property inspection fees;

      d.    failure to apply payments to interest and principal before escrow and fees;

      e.    failure to dismiss the foreclosure action for thirteen months;

      f.    filing of a second wrongful foreclosure;

      g.    failure to provide accurate repayment and reinstatement figures;

      h.    failure to accurately respond to Gritters' correspondence and other disputes;

      i.    overcharging Gritters' escrow account for taxes and insurance;

      j.    increasing monthly payments without notification to Gritters;

      k.    placing the loan in "default;"

      l.    converting escrow funds to unauthorized fees and costs; and

      m.    failure to conduct their affairs in good faith.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

## COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST OCWEN, NATIONSTAR, AND FREDDIE MAC)

105.    Gritters is a "consumer" as defined by FDCPA § 1692a(3).

**ANSWER:   This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

106.    The subject debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

**ANSWER:   This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

107.    Freddie Mac and the Servicers qualify as "debt collectors" as defined by § 1692a(6) because they regularly collect debts and use the mail and/or the telephone to collect delinquent consumer accounts. The Servicers and Freddie Mac qualify as "debt collectors" because they treated the subject debt like it was in default when each acquired rights to the subject debt.

**ANSWER:   This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**a.    Violation of § 1692d**

108.    The Servicers engaged in abusive and oppressive conduct through (i) perpetual unethical mismanagement of the escrow account; (ii) perpetual refusal to refusal to correct their accounting errors or adequately respond to Gritters' repeated disputes over several years; (iii) refusal to acknowledge the express terms of the loan modification; (iv) perpetual misapplication and rejection of payments; (v) assessment of illegal fees; and (iv) a wrongful foreclosure.

**ANSWER:** Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.

b.    **Violation of §§ 1692e & f**

109.    The Servicers' actions were unfair, unconscionable, false and deceptive as a result of their (i) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status when the loan modification was in effect; (v) threatening foreclosure, (vi) filing a wrongful foreclosure, (vii) assessing illegal foreclosure fees; and (viii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

**ANSWER:** This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.

110.    The Servicers misrepresented the debt by lumping their attorney's fees, unauthorized fees, and costs in with the principal debt obligation.

**ANSWER:** Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.

c.    **Violation of § 1692g(a)**

111.    After Nationstar initially communicated with Gritters on May 28, 2013, Nationstar was required to send Gritters a 30-day validation notice within five days.

**ANSWER:    Denied.**

112.    Nationstar failed to send a proper validation notice within five days of the initial communication with Gritters in violation § 1692g(a).

**ANSWER:    Denied.**

**d.    Violation of § 1692g(b)**

113.    After Nationstar initially communicated with Gritters on May 28, 2013, Gritters disputed the debt on June 10, 2010, triggering Nationstar's duty to verify the debt or cease collection actions.

**ANSWER:    Certain allegations of this paragraph assert legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies any dispute by Gritters on June 10, 2010 triggered a duty by Nationstar to verify the debt or cease collection actions and denies any remaining allegations in this paragraph.**

114.    After acknowledging Gritters' debt dispute, Nationstar failed to verify the debt or cease collection activities. Instead, Nationstar continued collection efforts after receiving Gritters' dispute in violation of § 1692g(b).

**ANSWER:    This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, denied.**

**e.    Violation of § 1692e(11)**

115.    Ocwen's communication with Gritters on February 18, 2013 failed to identify Ocwen as a "debt collector" in violation of § 1692e(11).

**ANSWER:    Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

116.    Nationstar's initial communications with Gritters on May 28, 2013 did not include any statement that even resembled, "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" in violation of § 1692e(11).

**ANSWER:     Nationstar admits that certain correspondence to Plaintiff, dated May 28, 2013, does not state the language quoted in this paragraph. Nationstar denies the remaining allegations in this paragraph.**

117.     Additionally, in at least five subsequent communications, Nationstar failed to identify itself as a "debt collector" in violation of § 1692e(11).

**ANSWER:     Denied.**

**f.     Violation of § 1692c(a)(2)**

118.     After Nationstar was put on notice the Gritters was represented by an attorney, Nationstar continued to communicate directly with Gritters on at least March 5, 2014 in violation of § 1692c(a)(2).

**ANSWER:     Denied.**

## COUNT III – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST PIERCE)

119.     Pierce qualifies as a "debt collector" on behalf of Nationstar under FDCPA §§ 1692a(6) and 1692e(2)(A).

**ANSWER:     Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

120.     Pierce is a "debt collector" as defined by § 1692a(6) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

**ANSWER:     Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

121.     Pierce is a "debt collector" in relation to the subject debt because it treated the debt like it was in default when it acquired rights to the subject debt. *Id.*

**ANSWER:** Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

  a.  **Violation of § 1692g(a)**

122. After Pierce initially communicated with Gritters on September 16, 2013, Pierce was required to send Gritters a 30-day validation notice within five days.

**ANSWER:** Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

123. Pierce failed to send Gritters any validation notice until October 15, 2013, in violation of § 1692g(a).

**ANSWER:** Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

  b.  **Violation of §§ 1692g(a)(2) & 1692e**

124. Pierce's validation notice dated October 25, 2013 stated, "The name of the current Creditor to whom the debt is owed is NATIONSTAR MORTGAGE LLC."

**ANSWER:** Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.

125. The true name of the creditor on October 25, 2013 was Freddie Mac.

**ANSWER: Count III is not asserted against Nationstar and further, this paragraph states a legal conclusion. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar states that Freddie Mac was the owner and investor of the subject loan as of October 25, 2013 and denies any allegations in this paragraph inconsistent with preceding fact.**

126. Pierce's failure to identify the name of the creditor to whom the debt is owed is a violation of § 1692g(a)(2), and Pierce's false representation that the creditor was "Nationstar Mortgage LLC" on October 25, 2013 is a violation of § 1692e.

**ANSWER: Count III is not asserted against Nationstar and further, this paragraph states a legal conclusion. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

**c. Violation of § 1692g(b)**

127. After receipt of Pierce's validation notice on October 25, 2013, Gritters disputed the validity of the debt in writing on November 11, 2013, triggering Pierce's duty to verify the debt under § 1692g or cease collection actions until it verified the debt.

**ANSWER: Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

128. Pierce failed to verify the debt or cease all collection activities after receipt of Gritters' debt dispute letter. Instead, Pierce proceeded to file for foreclosure on January 22, 2014 in violation of § 1692g(b).

**ANSWER: Count III is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar admits that a foreclosure action was initiated on January 22, 2014 in the Circuit Court of Cook County, Illinois as case number 14-CH-01202 captioned *Nationstar Mortgage LLC v. Gritters, et al.***

**Nationstar is otherwise without knowledge or information sufficient to form a belief**

**regarding the truth of the remaining allegations in this paragraph.**

129.    Pierce assessed charges against Gritters for illegal foreclosure fees after the November 11, 2013 debt dispute, without providing any verification of the debt in violation of § 1692g(b).

**ANSWER:    Count III is not asserted against Nationstar. Therefore, no response is**

**required. To the extent an answer is deemed required, however, Nationstar is without**

**knowledge or information sufficient to form a belief regarding the truth of the allegations**

**in this paragraph.**

**d.    Violation of § 1692c(a)(2)**

130.    After Pierce was put on notice that Gritters was represented by an attorney, Pierce continued to communicate directly with Gritters on at least March 12, 2014 in violation of § 1692c(a)(2).

**ANSWER:    Count III is not asserted against Nationstar. Therefore, no response is**

**required. To the extent an answer is deemed required, however, Nationstar is without**

**knowledge or information sufficient to form a belief regarding the truth of the allegations**

**in this paragraph.**

**COUNT IV – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**
**(AGAINST OCWEN, NATIONSTAR, AND FREDDIE MAC)**

131.    Gritters meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

**ANSWER:    This paragraph asserts legal conclusions for which no answer is**

**required. To the extent an answer is deemed required, however, Nationstar is without**

**knowledge or information sufficient to form a belief regarding the truth of the allegations**

**in this paragraph.**

132.    The Servicers violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in their attempts to collect a debt.

**ANSWER:** This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.

### a. Unfairness

133. The Servicers' conduct in relation to Gritters' loan was willful, malicious, unfair, arbitrary, and designed to place Gritters' account in a perpetual state of default.

**ANSWER:** This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.

134. The Servicers' conduct offends public policy as it demonstrated an industry-wide practice of charging unearned fees and costs to a borrowers in order to make a profit, and to deceive borrowers into paying more than what is owed.

**ANSWER:** Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.

135. The Servicers' actions are immoral because overcharging Gritters for unearned fees, overcharging Gritters' escrow without providing a refund, and filing a wrongful foreclosure amounts to an undue hardship to the borrower and an equally undue profit for the Servicers.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

136. The Servicers' actions caused substantial injury to Gritters and to consumers generally, as Gritters and consumers reasonably expect their contracts to be honored and their loans and escrow accounts to be properly managed and their payments properly applied.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

137. Gritters could not avoid these immoral undertakings because the Servicers would not accurately communicate with her in response to her phone calls, letters, and other objections.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

138. When taken as a whole over several years, the Servicers' conduct was so unethical and unending, Gritters had no choice but to submit.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

**b.    Deception**

139. The Servicers' following actions were deceptive: (i) attempting to collect upon and foreclose upon a debt that was not in default; (ii) sending disclosures, statements, and notices that included unauthorized or unearned costs and fees; (iii) making material misrepresentations

of fact regarding the status of the subject loan, the payment history, and the amounts actually owed for taxes and insurance; (iv) overcharging Gritters' escrow for taxes and insurance; (v) providing conflicting disclosures to Gritters; and (vi) employing communications with Gritters that were confusing and specifically designed to confuse Gritters so that she could not decipher the true status of her loan account.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

### c.    Misrepresentation

140.    In addition to the above conduct, the Servicers misrepresented the amounts due so Gritters could not understand why her payments were insufficient to bring the loan "current."

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph as they pertain to Ocwen.**

141.    Gritters relied on the amounts that the Servicers stated that she owed to her detriment. Gritters relied on the terms of the loan modification and representations that the foreclosure would be dismissed.

**ANSWER: Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the allegations in this paragraph.**

142.    The Servicers misrepresented the effective date of the loan modification as April 27, 2010 as opposed to April 1, 2010, and misrepresented the date of Gritters' first payment.

**ANSWER: Nationstar denies that it misrepresented anything with respect to Plaintiff's loan modification as Nationstar did not enter into any loan modification with Plaintiff and the loan modification referenced in this paragraph was entered into before Nationstar started servicing the loan on May 16, 2013. Nationstar is otherwise without**

**knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

143.    The Servicers made material misrepresentations regarding the amounts due under the loan, amounts due for escrow, and how Gritters' payments were applied.

**ANSWER:    This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

144.    Due to the misrepresentations, Gritters was unable to determine why her payments were "insufficient" to bring the loan "current" or why she was required to overpay her escrow account.

**ANSWER:    This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

145.    The misrepresentations, deception, and unfair practices complained of occurred in the course of conduct involving trade or commerce. Gritters relied upon the misrepresentations, deception, and unfair practices to her detriment.

**ANSWER:    Nationstar denies the allegations asserted against it and denies it engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

146.     Punitive damages are warranted because the Servicers' conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Gritters and consumers in general.

**ANSWER:  Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

### COUNT V – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (AGAINST OCWEN AND NATIONSTAR)

147.     The subject loan is a "federally related mortgage" under RESPA. *See* Exhibit A.

**ANSWER:   This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar state that the mortgage speaks for itself and denies any allegation inconsistent with mortgage. Nationstar is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph.**

148.     The Servicers each qualify as a "servicer" under RESPA § 2605(i)(2).

**ANSWER:   This paragraph asserts legal conclusions for which no answer is required.**

149.     While servicing the subject loan, the Servicers charged Gritters improper fees, costs, and charges not legally due under the mortgage contract or applicable law.

**ANSWER:  Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

150.     The Servicers violated RESPA by requiring Gritters to make excessive escrow payments not based on reasonably estimated expenditures or publically available data, tax bills, or insurance bills for the subject property.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

151.    The Servicers failed to timely acknowledge receipt of, respond to, or conduct a reasonable investigation in response to Gritters' QWRs or requests for information and disputes regarding loan servicing in violation of RESPA § 2605(e).

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

152.    The Servicers violated RESPA by failing to correct Gritters' account within sixty days of receiving a letter disputing the servicing in violation of RESPA § 2605(e).

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

153.    The Servicers violated RESPA § 2605(e) by failing to acknowledge receipt of Gritters' letters disputing the application of payments, the assessment of illegal fees, and the handling of the escrow account.

**ANSWER: Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

154.    The Servicers deducted amounts for taxes and insurance from Gritters' escrow account that were not owed, failed to make timely proper payments for taxes and insurance from the escrow account, and the funds were never returned to Gritters in violation of § 2605(g).

**ANSWER:** **Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in this paragraph or the allegations as they pertain to Ocwen.**

155.    Nationstar failed to credit, treated as late, and charged a late fee for payments made to Nationstar during the 60-day transfer when it acquired the servicing rights from Ocwen on May 16, 2013 in violation of § 2605(d).

**ANSWER:** **Nationstar does not answer this allegation as it is the subject of Nationstar's pending motion to dismiss (Dkt. No 85.).**

### COUNT VI – BREACH OF FIDUCIARY DUTY
### (AGAINST OCWEN, NATIONSTAR, AND FREDDIE MAC)

156.    A fiduciary relationship existed between the Servicers and Gritters with respect to management of Gritters' escrow account.

**ANSWER:** **This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies it engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations.**

157.    The Servicers (and therefore Freddie Mac) owed a fiduciary duty to Gritters because they were placed in a position of trust while managing Gritters' escrow account.

**ANSWER:** **This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies it engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations.**

158.    The Servicers had a duty under the mortgage with respect to the escrow account to apply the amounts held in escrow for proper purposes only.

**ANSWER:** **This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies it**

**engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations.**

159. The Servicers breached their duty by (a) using escrow funds to pay unearned fees and costs and to overpay taxes and insurance; (b) misleading Gritters as to the amount of insurance and taxes owed; (c) debiting illegal amounts from the escrow account without authorization; and (d) profiting from undisclosed fees and costs and overpayment of taxes and insurance.

**ANSWER: This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations against it and denies it engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations as they pertain to Ocwen.**

160. The Servicers and Freddie Mac failed to manage the escrow account in good faith when they (a) failed to properly account for timely payments; (b) failed to provide sufficient notice of a payment change or escrow change; (c) failed to provide Gritters notice for actual amounts due for insurance and taxes; (d) failed to respond to Gritters after repeated requests; and (e) used the escrow account to pay for unauthorized fees unrelated to taxes or insurance.

**ANSWER: This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations against it and denies it engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations as they pertain to Ocwen.**

161. The Servicers exercised their discretion arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the parties, without a proper motive.

**ANSWER: This paragraph asserts legal conclusions for which no answer is required. To the extent an answer is deemed required, however, Nationstar denies the allegations against it and denies it engaged in any improper or wrongful servicing of the**

**loan. Nationstar is otherwise without knowledge or information sufficient to form a belief**

**regarding the truth of the allegations as they pertain to Ocwen.**

**COUNT VII – VIOLATION OF THE TRUTH IN LENDING ACT**
**(AGAINST FREDDIE MAC)**

**a.       Violation of § 1641**

162.      In April 2012, the subject loan was sold to Freddie Mac.

**ANSWER:      Count VII is not asserted against Nationstar. Therefore, no response**

**is required. To the extent an answer is deemed required, however, upon information and**

**belief, denied.**

163.      Neither Ocwen nor Freddie Mac provided notice of the sale or transfer of the
master servicing and ownership of the debt within 30 days as required by § 1641(g).

**ANSWER:      Count VII is not asserted against Nationstar. Therefore, no response**

**is required. To the extent an answer is deemed required, however, Nationstar is without**

**knowledge or information sufficient to form a belief regarding the truth of the allegations.**

**b.       Violation of §1666d**

164.      Freddie Mac and the Servicers collected fees, costs, and charges in excess of that
permitted by the mortgage contract or permitted by law resulting in a credit balance in the
subject loan account in excess of $1.

**ANSWER:      Count VII is not asserted against Nationstar. Therefore, no response**

**is required. To the extent an answer is deemed required, however, Nationstar denies the**

**allegations asserted against it and denies Nationstar engaged in any improper or wrongful**

**servicing of the loan. Nationstar is otherwise without knowledge or information sufficient**

**to form a belief regarding the truth of the allegations as they pertain to Ocwen.**

165.      Gritters requested that the Servicers refund the credit balance but the Servicers
refused. This resulted in unearned fees and finance charges withheld by and for the benefit of the
Servicers and Freddie Mac, amounting to a violation of TILA § 1666d.

**ANSWER:** Count VII is not asserted against Nationstar. Therefore, no response is required. To the extent an answer is deemed required, however, Nationstar denies the allegations asserted against it and denies Nationstar engaged in any improper or wrongful servicing of the loan. Nationstar is otherwise without knowledge or information sufficient to form a belief regarding the truth of the allegations as they pertain to Ocwen.

### AFFIRMATIVE DEFENSES

Further answering the Complaint, and as additional defenses thereto, Nationstar incorporates by reference the foregoing affirmative statements as though fully set forth herein, without assuming the burden of proof where it is otherwise on Plaintiff as a matter of applicable substantive and procedural law, and further alleges as follows:

1. Nationstar began servicing Plaintiff's mortgage loan on May 16, 2013.

2. At the time Nationstar began servicing the loan, Plaintiff had already entered into a loan modification agreement with Ocwen on or around April 2010. Pursuant to the loan modification, the principal and interest payments were $302.30. The escrow amount had increased effective May 1, 2011. As of September 2013, the escrow payment was $486.34.

3. At the time the loan was service transferred to Nationstar, Plaintiff was in arrears with payments due since the February 1, 2013 monthly payment.

4. On or around May 29, 2013, Nationstar received a payment of $788.64, which it applied to the February 1, 2013 monthly installment.

5. On or around July 5, 2013, Nationstar received a payment that was applied to the March 1, 2013 monthly installment.

6.      On or around August 16, 2013, Nationstar received a payment that was returned to Plaintiff on August 19, 2013 as the payment did not satisfy the amount of arrears on Plaintiff's loan.

7.      Nationstar sent Plaintiff a correspondence dated August 1, 2013 notifying her that her loan would be accelerated due to the delinquency on her account with payments outstanding since the April 1, 2013 monthly installment.

8.      Nationstar offered to review Plaintiff for loan modifications and has reviewed Plaintiff for a Home Affordable Modification Program as well as Nationstar's loan modification program, but Plaintiff failed to qualify for any loan modification.

**First Defense**

9.      Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

10.     Plaintiff fails to state a claim on which relief may be granted.

**Second Defense**

11.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

12.     To the extent a violation of the FDCPA occurred, it occurred in spite of Nationstar's policies and procedures reasonably designed and put in place to avoid any error or violation.

**Third Defense**

13.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

14.     To the extent Plaintiff suffered damages, which Nationstar denies, Plaintiff's claims are barred, in whole or in part, by the application of the doctrine of failure to mitigate damages. Further, Plaintiff has incurred no actual damages as a result of any purported violations or allegations.

### Fourth Defense

15.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

16.     If Plaintiff suffered an injury, which Nationstar denies, such injury was caused by the conduct of others for whose conduct Nationstar is not responsible.

### Fifth Defense

17.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

18.     The claims set forth in Plaintiff's Complaint are barred because, to the extent Plaintiff suffered harm, which Nationstar denies, such harm was caused by her own acts and not by any acts of Nationstar.

### Sixth Defense

19.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

20.     Nationstar is not liable for any claims by Plaintiff because Nationstar's conduct at all times complied and was made in good faith conformity with all applicable laws, rules, regulations, and contracts.

### Seventh Defense

21.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

22.     With respect to Plaintiff's Illinois Consumer Fraud Act claim, Nationstar is not liable because its conduct complied with law, and therefore, Plaintiff's claims are barred under 815 ILCS 505/10b(1).

**Eighth Defense**

23.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

24.     To the extent applicable, any material breach of the loan documents by Plaintiff negates any duty Nationstar may have otherwise had under the loan.

**Ninth Defense**

25.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

26.     Plaintiff is barred by the voluntary payment doctrine.

**Tenth Defense**

27.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

28.     Plaintiff's claims are barred by the doctrine of laches.

**Eleventh Defense**

29.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

30.     Plaintiff's claims are barred by the doctrine of waiver and estoppel.

**Twelfth Defense**

31.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

32.     Plaintiff is barred by the doctrine of unclean hands.

### Thirteenth Defense

33.     Nationstar incorporates and realleges its allegations in paragraphs 1 through 8 above as though fully restated herein.

34.     Nationstar further hereby gives notice that it intends to rely upon such other and further defenses as may become available during discovery proceedings.

WHEREFORE, Defendant Nationstar Mortgage LLC respectfully requests that the Court enter an order denying all of the relief requested by Plaintiff, awarding Nationstar its fees and costs, and granting Nationstar such further and other relief as the Court deems just and appropriate.

Dated: May 14, 2015                                Respectfully submitted,

                                                   **NATIONSTAR MORTGAGE LLC**

                                                   /s/ Molly E. Thompson
                                                   Harry N. Arger
                                            By:    Margaret (Peggy) Rhiew
                                                   Molly E. Thompson
                                                   DYKEMA GOSSETT PLLC
                                                   10 South Wacker Drive, Suite 2300
                                                   Chicago, Illinois  60606
                                                   Phone: 312-627-2127
                                                   Fax:  866-420-4763

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2015, I caused the foregoing document to be filed with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all registered participants.

/s/ Molly E. Thompson