**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONNA M. GRITTERS, | ) | |
| | ) | Case No. 14-CV-916 |
| Plaintiff, | ) | |
| | ) | Judge: Jorge L Alonso |
| v. | ) | |
| | ) | Magistrate Judge: Jeffrey T. Gilbert |
| OCWEN LOAN SERVICING, LLC; | ) | |
| NATIONSTAR MORTGAGE, LLC; FEDERAL | ) | |
| HOME LOAN MORTGAGE CORPORATION; | ) | |
| and PIERCE & ASSOCIATES, P.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT PIERCE & ASSOCIATES, P.C.'S**
**MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

131525737v3 0956569

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ALLEGATIONS AGAINST PIERCE ............................................. 2

STATEMENT OF UNDISPUTED FACTS ............................................................... 2

STANDARD OF REVIEW .......................................................................................... 7

ARGUMENT ................................................................................................................. 8

I.      THE RECENT SUPREME COURT DECISION IN *SPOKEO, INC. V. ROBINS* DEMONSTRATES THAT PLAINTIFF LACKS ARTICLE III STANDING BECAUSE SHE HAS NOT BEEN HARMED OR SUFFERED AN "INJURY IN FACT." ...................................................................................................................... 8

II.     PLAINTIFF'S CLAIMS UNDER SECTION § 1692G FAIL. ....................................... 11

      A.     Pierce's September 16, 2013 letter was not the initial communication and further was not a communication sent in connection with the collection of a debt and therefore not governed under §1692g.................................................. 12

      B.     Even were Pierce's letter determined to be a collection communication, Plaintiff was not misled concerning her rights under 1692g as she received notice of those rights on several occasions from both Ocwen and Nationstar. ...................................................................................................... 13

      C.     Plaintiff cannot state a claim under §1692g(b) given she was provided verification of the debt in response to her November 11, 2013 validation request. ..................................................................................................... 17

III.    PLAINTIFF'S CLAIMS UNDER SECTIONS 1692G(A)(2) AND 1692E FAIL BECAUSE PLAINTIFF ADMITTED THAT SHE KNEW THE CREDITOR ASSOCIATED WITH HER MORTGAGE AND NOTE WAS FREDDIE MAC. ......... 18

IV.    THE NOTICE SENT BY PIERCE WAS NOT A COMMUNICATION SENT IN CONNECTION WITH THE COLLECTION OF A DEBT............................................. 21

      A.     The Notice sent by Pierce was not a communication sent in connection with the collection of a debt – a prerequisite for an FDCPA claim. ..................... 22

      B.     The Notice was sent with the express permission of a court of competent jurisdiction. ............................................................................................... 23

      C.     The Notice is immaterial to the collection of debt as Plaintiff admitted she did not interpret the Notice as a demand for payment and simply handed it to her attorney. ........................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bailey v. Security National Servicing Corp.*,
154 F.3d 384 (7th Cir. 1998) ..................................................................................2

*Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*,
No. 2:15–CV–120, 2016 WL 3247872 (N.D.Ind. June 13, 2016)..........................10

*Ditty v. CheckRite, Ltd, Inc.*,
973 F.Supp. 1320 (D. Utah 1997)............................................................................14

*Fisher v. Enter. Holdings, Inc.*,
No. 4:15CV00372, 2016 WL 4665899 (E.D.Mo. Sept. 7, 2016) .........................10

*Gburek v. Litton Loan Servicing LP*,
614 F.3d 380 (7th Cir. 2010) .........................................................................12, 22

*Groshek v. Time Warner Cable, Inc.*,
No. 15–C–157, 2016 WL 4203506 (E.D.Wis. Aug. 9, 2016) ...............................10

*Gubala v. Time Warner Cable, Inc.*,
No. 15–cv–1078, 2016 WL 3390415 (E.D.Wis. June 16, 2016)...........................10

*Hahn v. Triumph P'ships LLC*,
557 F.3d 755 (7th Cir. 2009) ..................................................................................19

*Hancock v. Urban Outfitters, Inc.*,
No. 14–7047, ––F.3d ––––, ––––, 2016 WL 3996710 (D.C.Cir. July 26,
2016) ........................................................................................................................10

*Jackson v. Abendroth & Russell, P.C.*,
No. 416CV00113RGEHCA, 2016 WL 4942074 (S.D. Iowa Sept. 12, 2016)....................9, 16

*Kariotis v. Navistar Int'l Transp. Corp.*,
131 F.3d 672 (7th Cir. 1997) ..................................................................................18

*Lane v. Bayview Loan Servicing, LLC*,
No. 15 C 10446, 2016 WL 3671467 (N.D.Ill. July 11, 2016) ...............................10

*Mahala A. Church v. Accretive Health, Inc.*,
No. 15–15708, ––– Fed.Appx. ––––, ––––, 2016 WL 3611543 (11th Cir. July
6, 2016) ....................................................................................................................10

*Muha v. Encore Receivable Man.*,
558 F.3d 623 (7th Cir. 2009) ...........................................................................19, 24

i

*Nichols v. Byrd,*
   435 F.Supp.2d 1101 (D. Nev. 2006) ......................................................................14

*O'Rourke v. Palisades Acquisition XVI, LLC,*
   635 F.3d 938 (7th Cir. 2011) ...............................................................................19

*Oppong v. First Union Mortg. Corp.,*
   566 F.Supp.2d 395 (E.D. Pa. 2008) ....................................................................14

*Provo v. Rady Children's Hosp.,*
   No. 15cv00081, 2016 WL 4625556 (S.D.Cal. Sept. 6, 2016) ..............................10

*Romero v. Dep't Stores Nat'l Bank,*
   No. 15–CV–193, —— F.Supp.3d ——, ——, 2016 WL 4184099 (S.D.Cal.
   Aug. 5, 2016) .......................................................................................................10

*Senftle v. Landau,*
   390 F.Supp.2d 463 (D. Md. 2005) .......................................................................14

*Smith v. Ohio State Univ.,*
   No. 2:15–CV–3030, ——F.Supp.3d ——, ——, 2016 WL 3182675 (S.D.Ohio
   June 8, 2016) ........................................................................................................10

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 ..................................................................................................8, 25

*Thomas v. Law Firm of Simpson & Cybak,*
   2001 WL 1516746 (N.D.Ill. Nov. 28, 2001) *rev'd on other grounds Thomas,*
   392 F.3d 914 (7th Cir.2004) ................................................................................14

*Trust for the Certificate Holders of the Merrill Lynch Mort. Investors, Inc.*
   *Mortgage Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.,*
   556 F.3d 100 (2nd Cir. 2009) ..............................................................................20

*Wade v. Regional Credit Ass'n.,*
   87 F.3d 1098 (9th Cir. 1996) ...............................................................................24

*Wahl v. Midland Credit Management, Inc.,*
   556 F.3d 643 (7th Cir.2009) ................................................................................19

*Weinstein v. Fink,*
   2001 WL 185194 (N.D. Ill. Feb. 26, 2001) .....................................................14, 15

ii

**Statutes**

735 ILCS 5/15-1101, et seq. ........................................................................................................19

735 ILCS 5/15-1208 ....................................................................................................................19

735 ILCS 5/15-1401 through 1405 ..............................................................................................19

735 ILCS 5/15-1601 through 1605 ..............................................................................................20

Cable Communications Policy Act ...............................................................................................10

D.C. Consumer Identification Information Act ............................................................................10

D.C. Consumer Protection Procedures Act ..................................................................................10

Fair Credit Reporting Act .............................................................................................................10

Illinois Mortgage Foreclosure Law .............................................................................................19

Maryland Consumer Protection Act .............................................................................................10

Telephone Consumer Protection Act ............................................................................................10

**Other Authorities**

Fed R. Civ. P. 56(c) .......................................................................................................................7

General Administrative Order No. 2009-05 ..................................................................................24

131525737v3 0956569

**DEFENDANT PIERCE & ASSOCIATES, P.C.'S
MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, PIERCE & ASSOCIATES, P.C., by and through its attorneys, David M. Schultz, Justin M. Penn and Jason L. Santos, and for its memorandum in support of summary judgment, states as follows:

## INTRODUCTION

Plaintiff brings the instant lawsuit against two of the servicers for her Mortgage loan, Ocwen Loan Servicing ("Ocwen") and Nationstar Mortgage, LLC ("Nationstar"), and Pierce & Associates, P.C. ("Pierce"), the law firm retained by the defendant loan servicers to file foreclosure actions as a result of Plaintiff's default under the terms of her Mortgage. Plaintiff's Complaint is replete with allegations of wrongdoing on the part of the three defendants. However, as evidenced by the record in this case, including her own testimony, Plaintiff fails to establish she suffered any injury-in-fact resulting from any of the defendants' actions. Further, it was Plaintiff's own obstinate refusal to make payments in accordance with the terms of her Mortgage agreement or contact the two loan servicer defendants directly for assistance with understanding her Mortgage statements which leads us to our current juncture in this Court.

With respect to Pierce, Plaintiff alleges several violations of the Fair Debt Collection Practices Act (FDCPA). As an initial matter, Plaintiff has failed to demonstrate any concrete, particularized injury sufficient to establish she has Article III standing. Even assuming she did, each of the alleged FDCPA violations are defeated by the undisputed evidence in this case. First, at all relevant times, Plaintiff knew her rights under § 1692g regarding her ability to request verification of the subject debt (i.e. Mortgage loan). In fact, Plaintiff both sought *and was provided* verification of the subject debt on multiple occasions by both loan servicer defendants as well as Pierce. Second, at all relevant times, Plaintiff knew that the holder of her Mortgage was The Federal Home Loan

1

Mortgage Corporation (also referred to as "Freddie Mac"). Finally, the Notice of Initial Case Management Conference sent to Plaintiff by Pierce during the pending foreclosure case was not an effort to collect a debt, which is a prerequisite for bringing a claim under the FDCPA. Even were the notice covered under the FDCPA, any technical violation was immaterial.

## SUMMARY OF ALLEGATIONS AGAINST PIERCE

In her Complaint, Plaintiff asserts four separate violations of the FDCPA allegedly committed by Pierce. First, Plaintiff alleges that Pierce failed to include validation language, pursuant to §1692g(a), in its letter dated September 16, 2013. (Dkt. 73, ¶¶ 122-123). Next, Plaintiff alleges that Pierce failed to verify the debt or cease collection activities after receipt of Gritters' debt dispute letter, in violation of §1692g(b). (*Id*. at ¶¶ 127-128). Plaintiff's third violation is based upon Pierce's alleged failure to identify the name of the current creditor in its October 25, 2013 letter in violation of §§1692g(a)(2) and 1692e. (*Id*. at ¶¶ 124-126). Finally, Plaintiff alleges that Pierce communicated directly with her after it knew she was represented by counsel, thus violating §1692c(a)(2). (*Id*. at ¶ 130). The communication upon which Plaintiff bases this alleged violation is a "Notice of Initial Case Management Conference" ("Notice") which Pierce sent to Plaintiff as was required by the rules of the Circuit Court of Cook County. *Id*.

## STATEMENT OF UNDISPUTED FACTS

In 2003, Plaintiff executed a Mortgage and Note (hereinafter "Mortgage") for a property located at 3018 182nd Place, Lansing, IL 60438. (Dkt. 187, Pierce's Statement of Material Facts, ("Pierce's SMF"), ¶ 7). Plaintiff's Mortgage has always been owned by The Federal Home Loan Mortgage Corporation (also referred to as "Freddie Mac"). (*Id*. at ¶ 8). Plaintiff understood that her Mortgage was owned by Freddie Mac since its inception. (*Id*. at ¶ 9). From August 2009 until May of 2013, Ocwen was the servicer of Plaintiff's Mortgage. (*Id*. at ¶ 2). During the time period when Ocwen serviced Plaintiff's Mortgage, she failed to make adequate payments and was found to be in

2

default a number of times. (*Id*. at ¶¶ 11-15). Each time Plaintiff failed to make the required payments under her Mortgage, Ocwen would send her a Notice of Default. *Id*. All of these notices included validation language pursuant to §1692g of the FDCPA. *Id*. Plaintiff admitted she received and read each of the notices from Ocwen. *Id*. Plaintiff also testified that she understood this language to mean that if she disputed the debt, or any portion thereof, she could request information regarding her loan and obtain verification of the debt. *Id*.

In February of 2010, Ocwen retained Pierce to file a foreclosure complaint against Plaintiff for failure to pay under the terms of her Mortgage. (*Id*. at ¶ 16). Pierce's initial communication to Plaintiff was sent in February of 2010 after it was retained by Ocwen. (*Id*. at ¶ 17). Plaintiff was provided verification of the debt that same month prior to the filing of the foreclosure complaint. (*Id*. at ¶ 18). Plaintiff ultimately entered into a loan modification with Ocwen and the foreclosure complaint was dismissed. (*Id*. at ¶ 19).

In May of 2013, Ocwen sold the servicing rights of Plaintiff's Mortgage to Nationstar. (*Id*. at ¶¶ 20-21). Plaintiff was informed of this transfer by both Nationstar and Ocwen. *Id*. Plaintiff understood that this transfer only affected the servicing rights to her Mortgage and that Freddie Mac continued to be the owner of her Mortgage. (*Id*. at ¶¶ 9, 21-22). Upon taking over servicing rights of Plaintiff's Mortgage, Nationstar sent Plaintiff a letter letting her know that if she had any questions about her Mortgage statements or loan status, she could contact her Single Point of Contact ("SPOC"), a Nationstar representative assigned to Plaintiff's account. (*Id*. at ¶¶ 24-25). Plaintiff received and understood this letter, yet never contacted her assigned SPOC despite the fact she disputed that her debt was in default and that she owed the amounts sought in Nationstar's initial Mortgage statements. *Id*. Plaintiff's monthly mortgage statements sent by Nationstar alerted her that she was in arrears with regard to her Mortgage payments and that her loan was considered

3

by Nationstar to be in default. (*Id*. at ¶¶ 26-27). These monthly mortgage statements sent to Plaintiff included validation language required by §1692g of the FDCPA. (*Id*. at ¶ 26). Again, this language notified Plaintiff she could dispute the debt, or any portion thereof, and request verification of her mortgage loan. (*Id*. at ¶ 16). Plaintiff never requested verification of her mortgage loan from Nationstar around the time the servicing rights were transferred. (*Id*. at ¶¶ 27-32).

On August 1, 2013, Nationstar sent Plaintiff a letter informing Plaintiff that she must pay the "full amount of default on this loan by … 09/05/2013" and that her failure to pay would result in Nationstar accelerating "the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. (*Id*. at ¶¶ 28-29). Instead of contacting Nationstar directly or the SPOC assigned to her account, Plaintiff sent a complaint against Nationstar and Ocwen (the prior servicer) to the Office of the Illinois Attorney General on August 11, 2013[1]. (*Id*. at ¶¶ 33-38). Nationstar investigated the allegations made in Plaintiff's complaint sent to the Office of the Attorney General and determined there was "no merit to her allegations and that there were no changes to the account that were warranted." *Id*. Nationstar notified Plaintiff of its findings. *Id*. Ocwen similarly responded to Plaintiff's complaint to the Attorney General's office and provided Plaintiff yet another detailed payment reconciliation history. *Id*.

Apparently unsatisfied with the plethora of information provided to her on multiple occasions, and still having not contacted her assigned SPOC at Nationstar, Plaintiff sent Ocwen and Nationstar identical letters dated September 6, 2013. (*Id*. at ¶¶ 39-44). Each letter was drafted by her attorneys which were termed "qualified written requests". *Id*. Essentially these letters were

---

[1] This was not the first complaint Plaintiff submitted to the Office of the Illinois Attorney General regarding the servicing of her mortgage loan. (Dkt. 187, Pierce's SMF, ¶ 34).

131525737v3 0956569

requesting verification of Plaintiff's Mortgage. (*Id*. at ¶ 42). These "qualified written requests" included eleven (11) requests for information, including a "complete and original life of loan transaction history"; the "Key Loan Transaction history, bankruptcy work form, or XLS spreadsheet of all accounts associated" with Plaintiff's mortgage loan; identification of the current holder of the original mortgage; "[c]opies of all collection notes, collection records, communication files"; a "complete and itemized statement of the escrow account of the loan"; among other things. (*Id*. at ¶ 43). Plaintiff admitted at her deposition that the information she sought in the "qualified written requests" would have been the same information she would seek through exercising her validation rights under §1692g. (*Id*. at ¶ 42).

Both Ocwen and Nationstar responded to Plaintiff's request providing her the documentation related to her Mortgage as she requested. (*Id*. at ¶¶ 44-46, ¶¶ 58-59). Specifically, on September 18, 2016, Nationstar sent Plaintiff a copy of the payment history associated with her Mortgage, which included: 1) "[w]hen payments were received"; 2) "[h]ow the payments were applied to the loan"; 3) "[a]ny disbursements made from the loan"; 4) "[a] description for each transaction, with running balances of the unpaid principal and escrow documents"; 5) "[t]he date fees and charges were assessed, if any"; and 7) "[a]ny amounts paid towards fees". (*Id*. at ¶¶ 44-46).

Around September of 2013, the same time that Nationstar provided Plaintiff the documents she requested in her "qualified written request", Nationstar retained Pierce as foreclosure counsel on account of Plaintiff' Mortgage remaining in default. (*Id*. at ¶ 47). On September 16, 2013, Pierce sent Plaintiff a "loss mitigation solicitation letter" on behalf of Nationstar explaining that she "may be eligible for certain opportunities that might be available concerning [her] mortgage." (*Id*. at ¶¶ 48-49). This letter did not ask Plaintiff to send in any payment, made no reference to any total due and requested only that Plaintiff contact Nationstar to discuss possible ways to avoid

131525737v3 0956569

foreclosure. *Id.* Plaintiff understood this letter only requested that she contact Nationstar to discuss alternatives to foreclosure and that Pierce was not making a demand for payment. (*Id.* at ¶ 50).

On October 25, 2013, Pierce sent Plaintiff a letter informing her that it had been hired by Nationstar "to commence foreclosure proceedings" and provided Plaintiff the "total amount of the debt due on the Mortgage and Note" as of the date of the letter. (*Id.* at ¶ 51). This letter included §1692 validation language, despite the fact Plaintiff was reminded of these rights on multiple occasions prior to this time. (*Id.* at ¶¶ 11-15, 17-18, 26, 48-49). Additionally, Pierce and the defendant loan servicer defendants sent Plaintiff verification of the debt multiple times prior to this letter. (*Id.* at ¶¶ 18, 44-46, 58). At the time Plaintiff received this letter, she understood that Nationstar was the servicer for her Mortgage and that Freddie Mac was the owner of her Mortgage. (*Id.* at ¶ 56). Pierce's letter identified Nationstar as the creditor both because that was communicated to it by Nationstar and because Nationstar was the holder of the indebtedness related to Plaintiff's Mortgage. (*Id.* at ¶¶ 53-54).

On November 11, 2013, Plaintiff, through her attorney, sent Pierce what she titled a "Fair Debt Collection Practices Act Dispute Letter". (*Id.* at ¶ 60-63). This letter was addressed to "Nationstar Mortgage c/o Pierce & Associates, P.C." and was sent to the address of Pierce's office. *Id.* This letter requested that "[b]oth Nationstar and Pierce" verify the debt "pursuant to 15 U.S.C. § 1692g". Pierce received the letter addressed to its client, Nationstar, and forwarded it on to Nationstar to provide Plaintiff verification of the debt. *Id.* Pierce also sent Plaintiff's attorney a letter on November 21, 2013 acknowledging receipt of the November 11, 2013 letter from Plaintiff's attorney requesting verification of the debt. (*Id.* at ¶ 64).

On November 26, 2013, Nationstar sent Plaintiff, care of her attorney, validation of the debt which included documentation regarding her mortgage loan and support for its determination that

the loan was in default. (*Id*. at ¶ 66). Specifically, Nationstar provided Plaintiff a copy of the Note and Security Instrument, the "Servicing Transfer Notice dated May 31, 2013, and a payoff statement good through September 30, 2013." (*Id*. at ¶ 67). Much like in response to Plaintiff's "qualified written request", Nationstar's response provided Plaintiff a copy of the payment history for the period of May 21, 2013 through the date of the letter, which included: 1) "[w]hen payments were received"; 2) "[h]ow the payments were applied to the loan"; 3) "[a]ny disbursements made from the loan"; 4) "[a] description for each transaction, with running balances of the unpaid principal and escrow documents"; 5) "[t]he date fees and charges were assessed, if any"; and 7) "[a]ny amounts paid towards fees". *Id*. Pierce relied on Nationstar's verification, the addressee of the dispute letter. (*Id*. at ¶ 68).

When Plaintiff failed to pay the amount requested by Nationstar or contact Nationstar to discuss alternatives to foreclosure, Nationstar directed Pierce to file a foreclosure complaint in the Chancery Division of Cook County, First District. (*Id*. at ¶¶ 69-70). On January 22, 2014, Pierce filed Nationstar's mortgage foreclosure complaint against Plaintiff. *Id*. Plaintiff's current attorneys for the instant federal lawsuit never appeared as counsel for Plaintiff during the pendency of the foreclosure action. (*Id*. at ¶ 72). On March 12, 2014, Pierce sent Plaintiff a "Notice of Initial Case Management Conference" as the only party of record for Plaintiff in the foreclosure action. (*Id*. at ¶ 73-74). Pierce was required to send this notice to the party of record for any foreclosure plaintiff pursuant to the rules of the Circuit Court of Cook County. *Id*.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).

7

## ARGUMENT

**I.**      **The recent Supreme Court decision in *Spokeo, Inc. v. Robins* demonstrates that Plaintiff lacks Article III standing because she has not been harmed or suffered an "injury in fact."**

The Supreme Court recently clarified that Article III standing requires that a plaintiff have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547. The "injury in fact must be both concrete and particularized." (*Id*. at 1548). In *Spokeo*, the Court made clear that a plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." (*Id*. at 1549). A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*.

To establish injury in fact, a plaintiff must show he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing this standing. *Id*. at 560-61. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id*. "A concrete injury must be 'de facto;' that is, it must actually exist." *Id*. As stated by the Supreme Court: "When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'" *Id*.

The facts of this case and Plaintiff's own testimony demonstrate that she has not suffered any concrete injury – tangible or intangible – sufficient to sustain her alleged claims under the FDCPA. Plaintiff claims in her Complaint that she suffered "emotional distress, mental anguish [and]

8

physical illness" as a result of the combined actions of the defendants. (Dkt. 73[2], ¶ 99). However, Plaintiff fails to produce one iota of evidence in support of her claimed damages other than her self-serving testimony. Further, Plaintiff's own testimony actually undermines her claim that she suffered an injury in fact. At her deposition, in response to questions posed by Ocwen regarding damages, Plaintiff admitted she never took medication. (Dkt. 187, Pierce's SMF, Exhibit 3, Plaintiff's Deposition, pp. 118:12-14; 228:2-11). Plaintiff also admitted she never sought medical treatment for her alleged emotional distress. (*Id*. at pp. 118:15-21; 227:14-228:1).

To make matters worse, when counsel for Pierce attempted to question Plaintiff during her deposition about her alleged actual damages related to those FDCPA claims against Pierce, Plaintiff refused (eventually at the direction of counsel) to respond. (*Id*. at pp. 207:6-210:2; 216:22-225:2; 227:14-228:20). Given the nature of the technical claims against Pierce, it is unsurprising that Plaintiff cannot elaborate on her damages, let alone link them to any conduct of Pierce. It defies logic that Plaintiff would suffer emotional distress or physical illness over receipt of a letter that did not include a recitation of the Plaintiff's validation rights when Plaintiff acknowledges she was aware of them (and indeed invoked them). Further, when Plaintiff received the Notice from Pierce regarding the case management conference in the pending foreclosure action, she was represented by counsel and simply handed it to her attorney. (*Id*. at pp. 226:3-228:20). When pressed whether receiving the Notice caused her emotional distress, she testified she felt "contempt". *Id*. This testimony is wholly insufficient to establish an actual, tangible injury. The wealth of case law since *Spokeo* demonstrates well that the Plaintiff here lacks standing to bring these claims against Pierce.

For example, in *Jackson v. Abendroth & Russell, P.C.*, No. 416CV00113RGEHCA, 2016 WL 4942074, at *7 (S.D. Iowa Sept. 12, 2016), the plaintiff alleged that a collection letter violated

---

[2] For ease of reference for the Court, Plaintiff's First Amended Complaint is attached as Exhibit 1 to Pierce's Statement of Material Facts. See Dkt. 187, Exhibit 1, Plaintiff's First Amended Complaint.

§1692g by demanding payment within the 30-day validation period and by failing to disclose that a request for the creditor's name had to be in writing. The court dismissed the claims for lack of standing because the consumer did not allege actual harm stemming from the violations. Plaintiff in that case could not establish a risk of harm because he did not allege he intended, but had been unable, to dispute the debt due to the violations. The court collected cases and provided extensive string citations to multiple decisions dismissing consumer cases for lack of standing.[3]

---

[3] For ease of reference, the Court's citations are the following: "Like the Eighth Circuit in *East Iowa Plastics* and *Braitberg*, other courts analyzing the injury-in-fact element following *Spokeo* have reached similar conclusions when a plaintiff alleges statutory violations, but lacks an additional injury. *See Hancock v. Urban Outfitters, Inc.*, No. 14–7047, ——F.3d ——, ——, 2016 WL 3996710, at *2–3 (D.C.Cir. July 26, 2016) (holding allegations that defendant violated the D.C. Consumer Identification Information Act and the D.C. Consumer Protection Procedures Act by requesting customers' zip codes in connection with credit card purchases is not a concrete Article III injury because "[the complaint] fails to allege that [plaintiffs] suffered any cognizable injury as a result of the zip code disclosures"); *Fisher v. Enter. Holdings, Inc.*, No. 4:15CV00372, 2016 WL 4665899, at *4 (E.D.Mo. Sept. 7, 2016) (finding allegations that a prospective employer violated the Fair Credit Reporting Act by obtaining a consumer report on the plaintiff without giving proper notice is not a concrete injury because "[a]ll [p]laintiff alleges is that the ... disclosure ... did not comply with the statute at issue"); *Groshek v. Time Warner Cable, Inc.*, No. 15–C–157, 2016 WL 4203506, at *2–3 (E.D.Wis. Aug. 9, 2016) (finding allegations that a prospective employer violated the Fair Credit Reporting Act by obtaining a consumer information report on the plaintiff without giving him notice is not by itself a sufficiently concrete injury); *Romero v. Dep't Stores Nat'l Bank*, No. 15–CV–193, —— F.Supp.3d ——, ——, 2016 WL 4184099, at *4–6 (S.D.Cal. Aug. 5, 2016) (holding that a debt collector placing a phone call using an automated telephone dialing system is "merely a procedural violation" of the Telephone Consumer Protection Act that does not by itself result in concrete harm); *Gubala v. Time Warner Cable, Inc.*, No. 15–cv–1078, 2016 WL 3390415, at *4–5 (E.D.Wis. June 16, 2016) (holding that a plaintiff does not suffer a concrete injury when his only alleged harm is that a cable company retained his personally identifiable information in violation of the Cable Communications Policy Act); *Smith v. Ohio State Univ.*, No. 2:15–CV–3030, ——F.Supp.3d ——, ——, 2016 WL 3182675, at *4 (S.D.Ohio June 8, 2016) (dismissing plaintiffs' claims for violations of the Fair Credit Reporting Act's disclosure requirements because plaintiffs "did not suffer a concrete consequential damage as a result of [the defendant]'s alleged breach of the [Fair Credit Reporting Act]"); *Khan v. Children's Nat'l Health Sys.*, No. TDC–15–2125, —— F.Supp.3d ——, ——, 2016 WL 2946165, at *7 (D.Md. May 19, 2016) (finding allegations that defendants violated the Maryland Consumer Protection Act and the D.C. Consumer Protection Procedures Act were bare procedural violations that did not result in standing because the plaintiffs "failed to connect the alleged statutory ... violations to a concrete harm". Furthermore, the Southern District of California addressed the FDCPA in two separate cases, finding in both that the respective plaintiffs' alleged statutory violations did not result in concrete injuries. *See Provo v. Rady Children's Hosp.*, No. 15cv00081, 2016 WL 4625556, at *2 (S.D.Cal. Sept. 6, 2016) (finding allegation that debt collector's letter violated the FDCPA is not a concrete injury when "nowhere in the [complaint] do [the plaintiffs] plead any harm or material risk of harm that they suffered as a consequence"); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08–CV–1392, ——F.Supp.3d ——, ——, 2016 WL 3919633, at *2 (S.D.Cal. June 16, 2016) (holding alleged FDCPA violations in a letter addressed to the plaintiff do not result in a concrete injury when the plaintiff never actually received the letter prior to litigation). *But see Mahala A. Church v. Accretive Health, Inc.*, No. 15–15708, —— Fed.Appx. ——, ——, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (finding statutory violation of FDCPA alone constitutes a concrete injury sufficient for standing); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3–5 (N.D.Ill. July 11, 2016) (same); *Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*, No. 2:15–CV–120, 2016 WL 3247872, at *1 n. 1 (N.D.Ind. June 13, 2016) (same).

131525737v3 0956569

Like the plaintiffs in the multiple cases above, Plaintiff here simply does not have a compensable injury linked to and arising from any conduct of Pierce. In this instance, Plaintiff not only understood her validation rights, but exercised those on several occasions and was provided verification of the debt. (Dkt. 187, Pierce's SMF, ¶¶ 11-15, ¶ 18, ¶ 26, ¶¶ 44-49). Further, Plaintiff admitted she knew who the owner of her Mortgage was since its inception. (*Id*. at ¶¶ 9, 56-57). Based upon the foregoing, Plaintiff lacks Article III standing and summary judgment should be granted in Pierce's favor.

**II.      Plaintiff's claims under § 1692g fail.**

The first two of four hyper-technical claims brought by Plaintiff are brought under §1692g of the FDCPA. Section 1692g requires that a debt collector, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt" shall send the consumer written notice containing: 1) the amount of the debt; 2) the name of the creditor to whom the debt is owed; 3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid; 4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt and provide a copy of such verification to the consumer; and 5) a statement, that upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. §1692g(a)(1)-(5).

Plaintiff bases her alleged violations under §1692g on two premises. First, Plaintiff claims that Pierce's September 16, 2013 letter was an initial communication sent in connection with the collection of a debt and therefore governed by §1692g. Second, Plaintiff claims that Pierce failed to provide validation for the debt in response to her validation request, sent by her attorney on

November 11, 2013, care of Pierce, and sent to Pierce's client. For reasons discussed in more detail below, Plaintiff is incorrect on both fronts.

A. <u>Pierce's September 16, 2013 letter was not the initial communication and further was not a communication sent in connection with the collection of a debt and therefore not governed under §1692g.</u>

On September 16, 2013, Pierce sent Plaintiff a letter, on behalf of its client Nationstar, explaining that she "may be eligible for certain opportunities that might be available concerning [her] mortgage." First, this was not Pierce's initial communication to Plaintiff with regard to the debt. Pierce had previously been retained by Ocwen to bring a foreclosure action and, in so doing, sent validation language to Plaintiff and provided verification of the debt. (Dkt. 187, Pierce's SMF, ¶¶ 16-19). Based upon this alone, Plaintiff cannot state a claim under §1692g based upon a communication that was not the *initial* communication.

Further, the subject letter contained none of the trappings of a collection letter. It made no demand for payment from Plaintiff, made no reference to any total due and requested only that Plaintiff contact Nationstar directly to discuss possible ways to avoid foreclosure. There is no bright-line test to determine whether a particular communication is "in connection with the collection of [a] debt." 15 U.S.C. § 1692e; *see Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384 (7th Cir. 2010) ("Neither this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt"). However, relevant factors to consider in determining whether a communication is collection activity include the "the absence of a demand for payment" and "the purpose and context of the communications—viewed objectively." *Gburek,* 614 F.3d at 384.

Here, when viewed objectively, the letter merely provided Plaintiff information regarding her various options to bring her loan current with Nationstar. The letter is informational in nature and makes no demand for payment. (See e.g. *Bailey v. Security National Servicing Corp.,* 154 F.3d

12

384, 386 (7th Cir. 1998)(The lack of a demand for payment is a strong indicator that the communication does not qualify as communication sent to collect a debt.). The only request made to Plaintiff in the letter was Pierce's request that she contact Nationstar to "discuss [the] situation" and "determine what alternatives are available to avoid foreclosure." Simply because the letter was related to Plaintiff's Mortgage does not convert this innocuous letter into one seeking to collect a debt for purposes of §1692g.

Finally, Plaintiff correctly understood that the subject letter did not reference a dollar figure and was not making a demand for payment. (*Id*. at ¶ 50). The letter clearly requests that Plaintiff contact Nationstar directly to discuss alternatives to foreclosure – nothing more. A plain and simple review of the letter reveals that, consistent with Plaintiff's reading, it simply was not a communication sent in connection with the collection of a debt and therefore not governed by the FDCPA.

B. <u>Even were Pierce's letter determined to be a collection communication, Plaintiff was not misled concerning her rights under 1692g as she received notice of those rights on several occasions from each of the defendants.</u>

As explained above, the September 16, 2013 letter cannot form the basis of an injury in fact. Moreover, Pierce's letter, when viewed objectively, cannot be seen as an attempt to collect a debt for purposes of the FDCPA. Under any circumstances, the fact remains that Plaintiff understood she had a right to dispute the debt and request that verification of her Mortgage be sent to her. Prior to receiving Pierce's letter, Plaintiff was provided notice of her rights under §1692g an abundance of times. (*Id*. at ¶¶ 11-15, 17-18, 26, 48-49). Specifically, Plaintiff was provided notice of her validation rights not less than twenty (20) times from her then loan servicer, Ocwen, when Ocwen sent Plaintiff "Notices of Default" regarding her deficient mortgage payments. *Id*. Plaintiff also received notice of her validation rights directly from Pierce's client, Nationstar, in her monthly mortgage statements. *Id*. Plaintiff admitted receiving each of the notices of default and her

13

monthly mortgage statements from Nationstar, both of which provided her notice of her validation rights. Finally, Pierce sent Plaintiff an initial communication regarding the subject debt at the initiation of the 2010 foreclosure action which provided notice of Plaintiff's validation rights. *Id.* Additionally, Pierce actually provided verification of the debt to Plaintiff in 2010. *Id.*

Even were this Court to find that Pierce's validation letter in 2010 be its "initial communication" for purposes of §1692g, Pierce was allowed to rely on the previous validation notices provided to Plaintiff by both Ocwen and Nationstar. (See e.g. *Oppong v. First Union Mortg. Corp.,* 566 F.Supp.2d 395, 404 (E.D. Pa. 2008)(Validation notice requirements do not apply to subsequent debt collectors); *Ditty v. CheckRite, Ltd, Inc.,* 973 F.Supp. 1320, 1329 (D. Utah 1997)("Section 1692g does not require another debt collector, undertaking collection efforts after a validation notice has been timely sent, to provide additional notice and another thirty-day validation period."); *Nichols v. Byrd*, 435 F.Supp.2d 1101, 1106-07 (D. Nev. 2006)(holding that where a validation notice had been sent by a debt collector, another debt collector hired to litigate for collection of the same debt need not supply a second validation notice); *Senftle v. Landau*, 390 F.Supp.2d 463, 473 (D. Md. 2005)(Based upon statutory interpretation, "there is only one 'initial communication' with a debtor on a given debt under §1692g(a), even though subsequent debt collectors may enter the picture."); *Thomas v. Law Firm of Simpson & Cybak,* 2001 WL 1516746 at *3-4 (N.D.Ill. Nov. 28, 2001) (Section 1692g only applies to the initial communication stage of the debt collection process.) *rev'd on other grounds Thomas,* 392 F.3d 914 (7th Cir.2004).

Another decision out of the Northern District of Illinois which is instructive to this issue is *Weinstein v. Fink,* 2001 WL 185194 (N.D. Ill. Feb. 26, 2001). In *Weinstein*, the plaintiffs filed a class action complaint against the defendant debt collector for various violations of the FDCPA, including the failure to include validation language pursuant to §1692g. (*Id.* at *6-7). The FDCPA

14

class plaintiffs were defendants in an underlying collection lawsuit filed by Fink in connection with the collection of a debt incurred by a hospital. *Id*. Initially, the hospital sought payment directly from the plaintiffs. *Id*. To that end, the hospital sent plaintiff several dunning letters notifying the plaintiffs of their validation rights. *Id*. When unable to collect the money, the hospital retained Fink to file suit on its behalf. Fink filed a verified complaint in state court. *Id*. Plaintiff claimed the lawsuit was the initial communication and that Fink violated the FDCPA by not providing notice of validation rights. *Id*. The specific issue considered in *Weinstein* was whether 1692g applies only to the initial communication stage of the debt collection process. *Id*. The court found that it was undisputed that the initial communication was made long before Fink filed the lawsuit on the hospital's behalf. *Id*. The court held that because the consumer's debt validation rights persist for only 30 days after receipt of a communication containing the debt validation notice, Fink cannot be found to have violated 1692g. *Id*. Nationstar and Ocwen each separately sent the initial collection letters to Plaintiff which notified her of her validation rights (multiple times). Pierce, as a subsequent debt collector was not required to reiterate those rights which were already provided pursuant to §1692g, which only governs initial communications.

It is also obvious in this case that Plaintiff had knowledge of her validation rights at the time she received Pierce's September 16, 2013 letter. (Dkt. 187, Pierce's SMF, ¶¶ 39-44). Just the week prior to Pierce's letter being sent, on September 6, 2013, Plaintiff sent what she termed as a "qualified written request" to both Ocwen and Nationstar. *Id*. Plaintiff admitted that the information and documents requested in the September 6, 2013 "qualified written request" would have been the same documentation she sought had she requested verification of the debt pursuant to §1692g. *Id*. Plaintiff is correct that the documentation provided by Ocwen and Nationstar in response to Plaintiff's "qualified written request" is exactly what she received in response to her

15

prior requests for verification of the debt. *Id*. Plaintiff was provided the payment history from both loan providers showing when payments were received, how the payments were applied, a description for each transaction with running balances of the unpaid principal and escrow accounts and the dates fees and charges were assessed. (*Id*. at ¶¶ 45-46, 58-59). Plaintiff was also provided a copy of her Note and security instrument. *Id*.

This is identical to the documentation she would have received had she requested verification. As such, even had Pierce's September 16, 2013 letter been a collection communication, the fact remains that Plaintiff had already requested (and was about to receive) the very documents she would need to verify her Mortgage.

Plaintiff's knowledge of her validation rights under §1692g is further evidenced by the fact she again sought to exercise those rights and requested validation of her Mortgage on November 11, 2013. The validation request was directed to Nationstar, care of Pierce as counsel. In response, Pierce sent the request to Nationstar, and it responded consistent with the FDCPA verification response. Not only is it evident Plaintiff understand her validation rights, it also appears that Plaintiff is "papering" her loan servicers and Pierce in an effort to create the very hyper-technical violations upon which she now brings suit.

Finally, the purpose of §1692g is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Jackson*, 2016 WL 4942074, at *6 (S.D. Iowa Sept. 12, 2016)(citing S. Rep. No. 95-382, at 4 (1977)). Here, neither of the stated purposes of the validation language requirement is affected. There is only one debt at issue in this case – Plaintiff's Mortgage. All relevant communications in the record from all involved parties reference this specific debt. As such, this is not an instance where any of the defendants sent a collection communication to Plaintiff that referenced a debt that

was not hers. Further, we are not dealing with a situation where Plaintiff paid off her Mortgage and is now being contacted regarding collection of a satisfied debt. As such, Pierce is entitled to summary judgment on Plaintiff's §1692g claim for Pierce's alleged failure to include a validation notice.

C.    Plaintiff cannot state a claim under §1692g(b) given she was provided verification of the debt in response to her November 11, 2013 validation request.

On October 25, 2013, Pierce sent Plaintiff a communication in connection with the collection of the outstanding amount due under Plaintiff's Mortgage. (Dkt. 187, Pierce's SMF, ¶¶ 51-55). This letter included the requisite validation language pursuant to §1692g(a) including, *inter alia*, a statement to Plaintiff that she had the right to request verification of the debt owed to Nationstar, in writing. *Id*. As discussed above, Plaintiff knew well these rights given the plethora of communications from the loan servicer defendants which regularly reminded her of those rights. On November 11, 2013, through her current attorneys, Plaintiff exercised her rights and requested verification of the debt. (*Id*. at ¶¶ 60-63). Plaintiff's letter was sent to Pierce's office, but was addressed to "Nationstar Mortgage c/o Pierce & Associates, P.C.".

Specifically, Plaintiff's letter demanded that:

> [b]oth Nationstar and Pierce must verify this debt within 30 days of receipt of this letter pursuant to 15 U.S.C. § 1692g by sending written verification of the debt, a written explanation of what payments were missed to substantiate declaring the loan in default and threatening foreclosure, an itemized statement with a full accounting of the unpaid principal balance, interest, corporate advances, and escrow advances, and a full payment history for the loan" [to Plaintiff's attorney]. *Id*.

Pierce, as counsel for Nationstar, forwarded Plaintiff's validation request to Nationstar, the entity to which the validation request was directed. *Id*. On November 26, 2013, Nationstar responded to Plaintiff's request and provided a copy of the "Note and Security Instrument" and a payment history showing how Plaintiff's payments were applied to the loan, as well as a "description for each transaction, with running balances of the unpaid principal and escrow

131525737v3 0956569

accounts", among other things. (*Id*. at ¶¶ 66-68). Nationstar's written verification reiterated the fact that the current holder of the Note was Freddie Mac – a fact known to Plaintiff since entering into the Mortgage agreement – and also reminded Plaintiff that all questions regarding payments and foreclosure proceedings could be directed to Nationstar as servicer of the loan. *Id*.

Despite receiving verification of her debt as requested, Plaintiff claims Pierce violated §1692g because the verification provided to Plaintiff came from Nationstar directly and not from Pierce. This claim fails the straight-face test as it defies common sense. Further, it is unsupported by the plain language of §1692g, which only requires that a debt collector cease collection and obtain verification of the debt in order to provide it to the consumer upon written notification of a dispute. Nowhere in §1692g does it state that *both* a debt collector and the original creditor is required to provide a consumer verification of a debt. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997)("Where the statute's language is plan, the court's function is to enforce it according to its terms."). Here, Pierce obtained verification of the debt for Plaintiff by forwarding her validation request directly to the entity it was addressed to – Nationstar. It is immaterial from which entity the verification came from so long as it was provided. The way the dispute letter was drafted (i.e. "Nationstar c/o Pierce & Associates, P.C.") is but another subtle reference to Plaintiff's attempt to elicit hyper-technical violations of the FDCPA, none of which further its purpose of combatting "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. §1692(a).

**III.**      **Plaintiff's claims under Sections 1692g(a)(2) and 1692e fail because Plaintiff admitted that she knew the creditor associated with her Mortgage was Freddie Mac.**

In its collection letter to Plaintiff sent on October 25, 2013, Pierce sought to collect $64,485.39, the then outstanding amount due under Plaintiff's Mortgage and Note. (Dkt. 187, Pierce's SMF, ¶¶ 51-55). The letter identified the loan number and informed Plaintiff that Pierce had been hired by Nationstar, "the Servicer of the above referenced[]mortgage loan to commence

foreclosure proceedings." *Id*. Plaintiff claims Pierce violated sections 1692g(a)(2) and 1692e because it did not identify Freddie Mac as the current creditor. However, a false or misleading statement is only actionable under the FDCPA if it is material. *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."). To be material, a statement must have "the ability to influence a consumer's decision." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011) (emphasis in original). Here, Plaintiff's admitted knowledge as to who the creditor was defeats her FDCPA claim as it was immaterial to her decision whether to pay the debt. (Dkt. 187, Pierce's SMF, ¶¶ 9, 57).

Moreover, the Seventh Circuit has noted that some technical violations are so minor that they cannot form the basis of an FDCPA claim. *Muha v. Encore Receivable Man.*, 558 F.3d 623, 628 (7th Cir. 2009)("If the average unsophisticated consumer would not be influenced by a statement rightly or wrongly claimed to be literally false, the case should end right there")(citing *Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 758 (7th Cir. 2009)(If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA- even if it is false in some technical sense); *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 646 (7th Cir.2009)(same). When the circumstances of this violation are put in perspective, this is the sort of violation that is so immaterial that it cannot rise to an actionable claim.

The underlying law governing collection of mortgages and notes is the Illinois Mortgage Foreclosure Law ("IMFL"), which determines to whom a debt is owed in the context of a mortgage foreclosure. See, gen., 735 ILCS 5/15-1101, et seq. The IMFL defines who is the mortgagee (735 ILCS 5/15-1208), sets forth the methods for terminating a mortgagor's interest in property (735 ILCS 5/15-1401 through 1405), and determines the rights of the mortgagor concerning redemption

19

and reinstatement (735 ILCS 5/15-1601 through 1605). Under the IMFL, the creditor is the holder of the indebtedness. The holder/creditor is distinct from the owner, but the distinction is without consequence under the circumstances.

Section 1692g requires identification of "the creditor to whom the debt is owed," but does not provide further explanation as to the meaning of that phrase or the intention of the requirement. However, cases considering this very issue describe the role of a mortgage servicer in a manner that fits the phrase. For instance, in *CWCapital Asset Mgmt, LLC v. Chicago Properties, LLC*, the Seventh Circuit held that the servicer of a mortgage was the "real party in interest" and could sue to foreclose the mortgage without the involvement of the owner of mortgage debt. 610 F.3d 497, 501 (7th Cir. 2010); see also *Trust for the Certificate Holders of the Merrill Lynch Mort. Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.,* 556 F.3d 100, 104 n.6 (2nd Cir. 2009)("As master and special servicer, [the mortgage servicer] was required to perform various administrative functions, including collection mortgage-loan payments . . . ."). This opinion comports with the common sense notion that the debtor should be informed of the entity that is the controls the note and mortgage, which is the servicer. As the servicer, Nationstar was the "holder of the indebtedness" and therefore the entity with decision-making powers related to enforcement of the terms of Plaintiff's mortgages, especially as they relate to late payments which are directed to the servicer. (Dkt. 187, Pierce's SMF, ¶ 53). For all intents and purposes, Nationstar was the "creditor" for purposes §1692g.

Moreover, Plaintiff admitted that she knew the owner of her Mortgage, since its inception, was Freddie Mac. (*Id*. at ¶ 9). Plaintiff also admitted she understood that both Ocwen and Nationstar were simply servicers of her loan acting on behalf of Freddie Mac. (*Id*. at ¶¶ 10, 22). Further, the servicing rights associated with Plaintiff's Mortgage had only recently switched from

20

Ocwen to Nationstar just five months earlier in May of 2013. At the time the servicing rights were transferred to Nationstar, both Ocwen and Nationstar sent Plaintiff letters informing her of the servicing transfer. (*Id*. at ¶¶ 20-22). Nationstar's letter to Plaintiff sent on May 31, 2013 informed her that "the servicing rights of your mortgage loan, *that is, the right to collect payments from you*, is being assigned, sold or transferred from OCWEN LOAN SERVICING, LLC to Nationstar Mortgage, LLC, effective 5/16/13." *Id*. (emphasis added).

At the time Pierce sent its initial collection letter to Plaintiff on October 25, 2013, she knew that Freddie Mac was the owner of her note and that Nationstar was the servicer authorized to collect her payments. In the context of residential home mortgages, the loan servicer is the point of contact with the mortgagor. As such, the communications directed to the mortgagors concerning their mortgage come from the servicer. When a mortgagor defaults, the loan servicer is tasked with retaining foreclosure counsel to initiate foreclosure proceedings and suing it its own name. In this instance, Nationstar retained Pierce to commence foreclosure proceedings against Plaintiff.

When Pierce sent Plaintiff the October 25, 2013 initial collection communication, it did so on behalf of Nationstar as its counsel. It therefore only makes sense that it would reference Nationstar – and not Freddie Mac – in that communication. Up to that point, all communications directed to Plaintiff regarding her payments and defaults under the terms of her Mortgage for lack of payments were from Nationstar. Regardless, due to Plaintiff's own admission that she understood that Nationstar was the servicer of her mortgage loan, while Freddie Mac was the actual owner, Pierce is entitled to summary judgment on this issue because any misstatement was immaterial.

**IV.**   **The Notice sent by Pierce was not a communication sent in connection with the collection of a debt.**

On March 12, 2014, Pierce mailed Plaintiff a court mandated Notice of Initial Case Management Conference ("Notice") in her foreclosure case pursuant to General Administrative

21

Order No. 2009-05 ("Order"). (Dkt. 187, Pierce's SMF, ¶¶ 73-74). The Order requires all "plaintiffs' counsel to send a Notice of Initial Case Management Conference to all defendants of the date, time, and place of the Initial Case Management Conference in each mortgage foreclosure case in the Chancery Division". Id. Plaintiff claims this Notice violated §1692c(a)(2) of the FDCPA because it was sent at a time Pierce knew Plaintiff was represented by counsel. Plaintiff's claim fails for three reasons.

First, Pierce's sending of the Notice was not an effort to collect a debt, which is a prerequisite for bringing a claim under the FDCPA. Second, Section 1692c clearly exempts any communication sent with "the express permission of a court of competent jurisdiction." 15 U.S.C. §1692c(a). Finally, even assuming there was a violation (there was not), any technical violation is immaterial, and cannot form the basis for an FDCPA violation because the Notice simply provided Plaintiff with information and asked for nothing.

> A.  The Notice sent by Pierce was not a communication sent in connection with the collection of a debt – a prerequisite for an FDCPA claim.

Pierce sent the Notice at issue in this case to comply with the Order governing foreclosure matters and mandated by the Circuit Court of Cook County. *Id*. As discussed in Section II-A above, the Notice has none of the traditional elements of debt collection letters (i.e. amount of the debt, demand for payment, etc.).  See *Gburek,* 614 F.3d at 384 (There is no bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt, but "the absence of a demand for payment" and "the purpose and context of the communications—viewed objectively.").  This Court can review the four-page Notice and objectively determine that the animating purpose of the Notice is not the collection of a debt.

A recent decision out of the Southern District of Florida is instructive.  In *Muller v. Midland Funding, LLC*, the debt collector defendant sent a state law required notice informing him that his

22

debt had been assigned to another creditor, and plaintiff claimed it violated the FDCPA because it was the initial communication and did not contain the required disclosures. 2015 WL 2412361 (S.D. Fla. May 20, 2015). The court carefully considered whether the statutorily required notice was "in connection with the collection of a debt," concluding it was not. *Id*. at \*4-11. In *Muller*, the court reviewed the letter, and easily concluded that the animating purpose of the letter " was … to inform Plaintiff about the assignment of his purported debt to Defendants rather than to induce payment." *Id*. at \*4. The letter opened by giving notice of the assignment, neither mentioned payment nor an outstanding balance, and contained direct statements written in complete sentences about the letter's purpose. *Id*.

These same characteristics are all present in the Notice. It opens by explaining it is giving notice in compliance with Illinois Supreme Court Rule 218 that there will be an initial case management, indicates that Plaintiff does not need to attend personally, and gives her notice of free legal help available to her and the potential for mediation as required by the Circuit Court of Cook County.

The Notice cannot be seen to induce or solicit payment. Again, the Notice requests no payment; references no outstanding debt amount; provides no information regarding the mortgage; nor does it seek to settle an existing financial obligation. *Id*. The only objectively reasonable animating purpose behind the mailing of the Notice was for Pierce to comply with the rules of the Circuit Court. For these reasons, the Notice cannot be seen as a communication connected with the collection of a debt.

B.     The Notice was sent with the express permission of a court of competent jurisdiction.

Section 1692c(a) of the FDCPA governs the general content of communications with consumers. Plaintiff claims that Pierce's March 12, 2014 letter violates this section of the FDCPA.

Plaintiff ignores, however, the preamble to Section 1692c(a), which exempts communications made with "the express permission of a court of competent jurisdiction."  15 U.S.C. §1692c(a).

The Circuit Court of Cook County, Illinois issued General Administrative Order No. 2009-05. (Dkt. e, Pierce's SMF, ¶ 74). The Order requires all "plaintiffs' counsel to send a Notice of Initial Case Management Conference to all defendants of the date, time, and place of the Initial Case Management Conference in each mortgage foreclosure case in the Chancery Division". *Id*. This Order, issued by a court of competent jurisdiction, gives permission to send the Notice. Indeed, it is not just permission, but the requirement that the order be sent. *Id*. The Order also sets forth the form of the Notice, which Pierce followed. *Id*. Pierce cannot be found to have violated Section 1692c(a) of the FDCPA because it followed the directions and form of the Circuit Court of Cook County.

C.    <u>The Notice is immaterial to the collection of debt as Plaintiff admitted she did not interpret the Notice as a demand for payment and simply handed it to her attorney.</u>

The FDCPA does not provide a second, federal layer of protection directed at state court litigation.  In fact, federal circuit courts have rejected attempts to use the FDCPA to monitor state court and state requirements.  *Wade v. Regional Credit Ass'n.,* 87 F.3d 1098, 1099 (9th Cir. 1996) (debt collection practices in violation of state law are not per se violations of FDCPA).  Also, as stated earlier in Section II-A, some technical violations are so minor that they cannot form the basis of an FDCPA claim.  *Muha,* 558 F.3d at 628.

Pierce, as Nationstar's foreclosure counsel, was required by Illinois state court rules to send out proper notice of the initial case management conference to all named parties.  (Dkt. 187, Pierce's SMF, ¶ 74). According to the electronic docket in the foreclosure case, Plaintiff was appearing pro se and had no legal representation. (*Id*. at ¶ 72).  However, Plaintiff *did* have legal representation at the time the Notice was sent as evidenced by the original lawsuit filed in this case

24

in February of 2014. (Dkt. 1, Original Complaint). Despite representing her in the federal lawsuit, Plaintiff's attorneys did not file appearances to represent her in the state foreclosure proceeding. (*Id.* at ¶ 72). Had Plaintiff's attorneys filed appearances in the foreclosure action on Plaintiff's behalf, they would have received the Notice from Pierce instead of Plaintiff. (*Id.* at ¶ 75). Instead, by claiming to have no representation in the foreclosure proceeding, Plaintiff attempted to elicit yet another hyper-technical FDCPA violation.

Finally, it is important to highlight the fact that when Plaintiff received the notice, she was represented by counsel and simply handed it to her attorney. (Dkt. 187, Exhibit 2, Pl's Dep., pp. 226:3-228:20). Plaintiff testified only that she felt "contempt" upon receipt of the notice. *Id.* As discussed in Section I, this testimony is wholly insufficient to establish an actual, tangible injury or to support a violation under the FDCPA which is material. Again, the wealth of case law since *Spokeo* demonstrates well that the Plaintiff here incurred no injury in fact and as such, her claim fails.

WHEREFORE, Defendant, PIERCE & ASSOCIATES, P.C., respectfully requests that the Court grant it summary judgment and for such other relief the Court deems just and proper.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ *Jason L. Santos*
Jason L. Santos

David M. Schultz
Justin M. Penn
Jason L. Santos
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081
Telephone: 312-704-3000

25

Facsimile: 312-704-3001
jsantos@hinshawlaw.com

26

## <u>CERTIFICATE OF SERVICE</u>

     I, an attorney, hereby certify that on October 25, 2016 I electronically filed Defendant's Memorandum in Support of Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                        /s/*Jason L. Santos*
                        Jason L. Santos

131525737v3 0956569